# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2417

_____

Peter Christian,                              *
                                              *
        Appellant,                      *
                                              *
                                              *    Appeal from the United States
    v.                                        *    District Court for the
                                              *    Southern District of Iowa.
                                              *
David Wagner, Captain; William                *
Deatsch; Sue Koshatka,                        *
                                              *
                                              *
        Appellees.                      *

_____

Submitted: January 12, 2010
Filed: October 20, 2010

_____

Before SMITH and COLLOTON, Circuit Judges, and KORNMANN,[1] District Judge.

_____

COLLOTON, Circuit Judge.

Peter Christian, a former pretrial detainee at the Johnson County (Iowa) Jail, brought an action under 42 U.S.C. § 1983 against several jail employees in their individual capacities. Christian alleged that he suffered an adverse reaction to HDQ

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota, sitting by designation.

Neutral, a cleaning product used at the jail. The district court[2] instructed the jury to decide whether the defendants were deliberately indifferent to a serious medical need. The jury found in favor of the defendants, and the district court denied Christian's renewed motion for judgment as a matter of law and for a new trial. We affirm.

I.

Christian entered the Johnson County Jail as a pretrial detainee on May 11, 2001. At the time, Captain David Wagner was the jail administrator, and Sergeant William Deatsch and Deputy Sue Koshatka worked at the jail. Upon Christian's arrival, jail employees assigned him to cellblock A. Christian reported on a medical intake form that he was not taking medication for asthma, and that he had no major health problems.

Christian claims that shortly after his arrival at the jail, he began to cough up blood, to experience difficulty breathing, and to feel pain in his lungs. He testified that he sought help informally from jail employees, including Koshatka, until he was told of the inmate grievance process. Under this grievance process, as described by Captain Wagner, an inmate filed a grievance on a form provided by a jail employee. The grievance was then submitted to Wagner, who either handled the matter himself or assigned the matter to another employee for later review by Wagner. Once the grievance was resolved by Wagner, the inmate could appeal an unsatisfactory decision on a form provided by a jail employee. Major Duane Lewis, Wagner's superior, decided the appeals.

On June 10, Christian filed a grievance objecting to, among other concerns, the "use of toxic cleaning chemicals" and "denial of medical attention." Wagner assigned

---

[2]The Honorable Robert W. Pratt, Chief Judge, United States District Court for the Southern District of Iowa.

the grievance to Deatsch for investigation. Deatsch advised Christian that medical request forms were available and would be reviewed by the jail's medical staff and handled appropriately.

Two days after filing the grievance, Christian submitted a medical request form. He complained of a "toxic chemical pink spray" that caused him to cough up blood, dirty ventilation systems, "fiberglass filters" and a "generally unsanitary environment" that caused chest pain, a spinal disorder aggravated by "hard metal bunks," and a gastric disorder aggravated by certain foods. In response to this medical request, Marjorie Goodyear, a physician's assistant ("PA"), examined Christian on June 14. In the record of Christian's examination, Goodyear noted that she advised Christian to talk to deputies to see if he could be moved from his cell when other inmates used the cleaning products.

Christian was transferred to cellblock G on June 19 after he had an altercation with another inmate about cell cleaning. The jail's log book indicated that jail employees moved Christian due to "problems with his turn cleaning in the block" that arose when Christian claimed the cleaning product caused him to "have an allergic reaction." Christian filed a grievance about his removal from cellblock A, and claimed that he refused to clean for religious reasons. Wagner answered the grievance and determined that the transfer separated Christian from the other inmate and diffused the problem.

On June 28, Christian's attorney wrote Wagner, asking for copies of Christian's medical request form, the documentation from his examination with Goodyear, and information about the "pink cleaning fluid," which was HDQ Neutral. In response, Wagner provided Christian with the material safety data sheet for HDQ Neutral, and sent the requested medical information to Christian's counsel.

On July 2, Christian filed an appeal regarding a previous grievance. In the appeal, Christian protested the use of "chemicals which have known or unknown toxi[co]logical/harmful effects," including "bug killer," HDQ Neutral, and bleach. Lewis, in response, stated that there was no evidence of a health risk caused by the chemicals, and he provided Christian with the jail's air quality report, which was prepared by an industrial hygienist.

Christian submitted a medical request form the following day, listing concerns regarding an unsanitary environment, exposure to mold spores, insect infestation, lack of fresh air and sunshine, the ventilation system, and chemicals, including bleach, HDQ Neutral, and insecticide, all of which he claimed sickened him and made it hard for him to breathe. On July 5, Koshatka escorted Christian to a medical examination. PA David Walz examined Christian and told him to take Aphedrid, an over-the-counter antihistamine for respiratory symptoms. According to the record of the examination, he also instructed Christian to minimize his exposure to cleaning products. Christian stopped taking Aphedrid shortly after the examination, complaining of side effects and ineffectiveness.

On July 11, Christian filed an appeal in which he reasserted a laundry list of concerns raised in earlier grievances. Christian again claimed that the jail's cleaning supplies caused him illness, and he objected that the jailers did not remove him from the cellblock when the chemicals were used. Lewis responded that Christian's grievances and appeals were "rambling and hard to interpret constructively." Lewis warned Christian that repetitive grievances could result in disciplinary action.

Christian requested medical services on July 16, alleging that a moldy carrot in his lunch made him sick. In the request, Christian asserted that the moldy carrot aggravated his "symptoms," including a headache and pain in the roof of his mouth. He also complained of a "general sickness" that began on May 11 and intensified on

July 16. Goodyear examined Christian the next day and advised him to increase his fluid intake and to avoid moldy foods.

In a July 18 grievance, Christian protested that he had not received an answer about why he had not been moved from his cellblock when bleach, HDQ Neutral, and insecticide were in use. Wagner responded that the same chemicals were used throughout the jail, and that movement in the jail was "non-grievable." Wagner nevertheless met with Christian and offered to move him to a holding cell where the chemicals were not used. Christian declined. He filed another grievance two days later ambiguously complaining of the "proximity" of a cleaning spray. Deatsch responded that Christian's "concern about the location of the spray is outweighed by the need to keep the facility clean."

Christian was released from the jail on August 9. He went to an emergency room the following day, complaining that he suffered from sinus and throat pain and that he had coughed up blood. Christian requested a test for tuberculosis, which proved negative, and he received no other treatment. He testified that emergency room staff may have prescribed medication, but that he would have refused it, fearing "another reaction."

Christian sued Wagner, Deatsch, and Koshatka, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights under the Due Process Clause of the Fourteenth Amendment.[3] Before jury selection, the district court ruled that the jury would be instructed to decide only whether the defendants had been deliberately indifferent to a serious medical need, which is one type of "conditions of confinement" claim. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). Christian objected, arguing that the jury should also be instructed to decide a second claim regarding his

---

[3]The complaint also named Sheriff Robert Carpenter as a defendant, but the district court dismissed Christian's claims against Carpenter for lack of evidence, and Christian does not appeal that decision.

conditions of confinement. At the conclusion of evidence, Christian filed a motion to amend the pleadings, pursuant to Federal Rule of Civil Procedure 15(b), asserting that the evidence supported a separate jury instruction about whether the defendants had been deliberately indifferent to Christian's conditions of confinement. The district court denied the motion and instructed the jury to decide Christian's claim of deliberate indifference to a serious medical need. The jury returned a verdict in favor of Wagner, Deatsch, and Koshatka, based on a finding that Christian did not have a "serious medical need." The district court denied Christian's renewed motion for judgment as a matter of law and, alternatively, for a new trial.

## II.

### A.

Christian contends that the district court erred by denying his renewed motion for judgment as a matter of law on the claim that Wagner, Deatsch, and Koshatka were deliberately indifferent to his serious medical need. The district court concluded that the evidence supported the jury's finding. We review the district court's ruling *de novo*, and will affirm unless no reasonable juror could have found in favor of Wagner, Deatsch, and Koshatka. *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 885 (8th Cir. 2009).

It is settled that the Eighth Amendment imposes duties on prison officials to ensure that prisoners convicted of crimes receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). The Eighth Amendment does not apply to pretrial detainees, but the Due Process Clause of the Fourteenth Amendment imposes analogous duties on jailers to care for detainees. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). A pretrial detainee alleging unconstitutional conditions of confinement based on denial of medical care must establish both that the deprivation of which he complains was

sufficiently serious as an objective matter to deny him "the minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (internal quotation omitted), and that the prison officials acted with a sufficiently culpable state of mind. *Id.* at 303.

To establish a constitutional violation based on inadequate medical care, Christian must show that he suffered from a medical need that was objectively "serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). This in turn requires evidence that the medical condition was diagnosed by a physician as requiring treatment, or was so obvious that a layperson would recognize the need for a physician's attention. *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008). Under the subjective prong, Christian must show that the defendants were aware of the need but deliberately disregarded it. *Id.*

Christian contends that jailers ignored his serious medical need to be isolated from the HDQ Neutral cleaning product. He asserts that PA Goodyear diagnosed him with chemical pneumonitis during the June 14 examination, and that both PA Goodyear and PA Walz issued medical orders to jail employees to limit Christian's exposure to cleaning products, including HDQ Neutral. Christian also relies on an expert witness, Dr. Ernest Chiodo, who testified by deposition that Christian suffered from chemically-induced asthma that was caused or aggravated by exposure to HDQ Neutral at the jail. Chiodo further testified that Christian suffered from scarring in his lungs.

Considering the record as a whole, we conclude that a reasonable jury could find that Christian did not show that a physician or other medical personnel had diagnosed him with a medical condition that required treatment while he was detained. PA Walz reviewed the record of the June 14 examination and testified that Goodyear noted possible chemical pneumonitis based only on Christian's reported symptoms. According to Walz, Goodyear did not observe objective evidence supporting a diagnosis, and the record of the examination described a normal exam. Walz testified

-7-

that the record did not contain a medical order to jail employees, but rather an instruction to Christian that he should inform deputies if he experienced symptoms.

Walz also testified that his July 5 examination of Christian revealed only some nasal drainage, and otherwise found Christian in normal condition. Walz's record of Christian's examination contained only an instruction that Christian should move away from where the cleaning products were being used. Although Dr. Chiodo opined that chemicals used at the jail caused medical problems for Christian, a competing expert, Dr. Patrick Hartley, rejected Chiodo's diagnosis of asthma, and found no evidence of pulmonary fibrosis in a CT scan. The jury thus reasonably determined that Christian failed to establish a serious medical need while incarcerated.

The evidence also supports a finding that Christian's need for medical attention was not so obvious that a layperson must have recognized it. Christian testified that he informed jail employees that he coughed up blood and experienced difficulty breathing, but these claims were corroborated only by his mother. Several jail employees testified that they did not observe Christian suffering adverse reactions to cleaning solutions, and that they had no recollection of Christian complaining about a medical problem. It was the jury's function to evaluate Christian's credibility, and they reasonably could discount his claims of oral complaints.

Christian's various written grievances and medical requests do not compel a finding that he suffered from a serious medical need based on the HDQ Neutral chemical. When Christian submitted requests for medical attention that mentioned an adverse reaction to cleaning products, the jail's medical staff examined Christian promptly. The medical staff also examined Christian after he complained of symptoms from a moldy carrot, but he did not refer to HDQ Neutral in the request for medical services. Neither PA Goodyear nor PA Walz observed evidence of a serious medical problem in those medical examinations. "If trained health care officials could

not find a serious medical need in these circumstances, then we decline to hold that a reasonable layperson should have done so." *Aswegan v. Henry*, 49 F.3d 461, 465 (8th Cir. 1995). The district court did not err in denying Christian's motion for judgment as a matter of law.

B.

Christian's other contention is that the district court erred by not instructing the jury on a conditions of confinement claim distinct from a claim based on denial of medical care claim. Christian asserts that his pleadings and the evidence at trial established a separate submissible due process claim that the lack of clean air caused by overcrowding, poor ventilation, and the use of HDQ Neutral created an unjustifiable risk to his *future* health. He contends on appeal that the jail conditions in Johnson County created such a risk, and that the risk has manifested itself in his present medical conditions, namely, chemically-induced asthma and scarring of the lungs.

As a general matter, Christian is correct that a prison official may violate the Eighth Amendment, or its Due Process Clause analogue for pretrial detainees, "by being deliberately indifferent *either* to a prisoner's *existing* serious medical needs *or* to conditions posing a substantial risk of serious *future* harm." *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995). Jail employees may not ignore a dangerous condition of confinement "on the ground that the complaining inmate shows no serious *current* symptoms." *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (emphasis added). Both types of claims challenge the detainee's conditions of confinement.

In this case, Christian failed to challenge his conditions of confinement based on a risk of future injury that was distinct from the current medical need that he allegedly endured while incarcerated. His amended complaint purports to allege two causes of action, but neither articulates a claim that jailers were deliberately

indifferent to a serious risk of future harm, as opposed to a serious medical need while in jail. The first cause of action was for a "violation of constitutional rights" based on the refusal to remove Christian from the cellblock when HDQ Neutral was used. The second was based on "deliberate indifference," and asserted that the defendants, with knowledge of Christian's medical need, "acted or failed to act in such a way as to deprive [Christian] of necessary and adequate medical care thereby endangering [Christian's] health and well-being." The complaint's statement of material facts alleges that Christian began experiencing symptoms *during* his pretrial detention.

Prior to trial, the parties informed the district court of a disagreement about whether the jury should be instructed on two separate claims. The defendants asserted that the jury should be instructed to decide only whether the jailers had been deliberately indifferent to a serious medical need. Christian alleged in a pretrial filing that a second claim existed, because "even if there was no serious medical need, [he] was subjected to inhumane and unconstitutional conditions of confinement because the Defendants knew of his severe reaction to the chemical and failed to take any steps to minimize the risk of serious harm created by his conditions of confinement."

The district court twice addressed this disagreement with the parties, and Christian never identified a claim based on substantial risk of future injury. In a conference prior to jury selection, the court asked Christian what evidence supported a second cause of action. Christian replied that the jury could find that he had a "serious need to access . . . . [c]lean air, breathable air, and the conditions of the jail did not permit that." After the presentation of evidence, Christian filed a motion to amend the pleadings to conform them to evidence that supported a second cause of action. When addressing that motion, the district court twice asked Christian whether he was complaining about the jail's "overall conditions" in the second claim, and Christian agreed that this was the essence of his second claim. The district court declined to issue a separate instruction on that theory, citing the Supreme Court's statement in *Wilson v. Seiter* that "[n]othing so amorphous as 'overall conditions' can

-10-

rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." 501 U.S. at 305. The court ruled that it would instruct the jury to decide only a single cause of action – *i.e.*, whether the jailers were deliberately indifferent to a serious medical need.

Despite several opportunities, Christian did not express to the district court that any condition of confinement allegedly created risk of future harm distinct from his medical symptoms while incarcerated. To the extent that Christian described a second claim, he referred broadly to the lack of clean air and the "overall conditions" of confinement. The Federal Rules of Civil Procedure require that a party objecting to the court's failure to give a requested jury instruction must state "distinctly the matter objected to and the grounds for the objection," Fed. R. Civ. P. 51(c)(1), and "must 'bring into focus the precise nature of the alleged error.'" *Jones Truck Lines, Inc. v. Full Serv. Leasing Corp.*, 83 F.3d 253, 256 (8th Cir. 1996) (quoting *Palmer v. Hoffman*, 318 U.S. 109, 119 (1943)). Because Christian did not make a specific objection on the ground he raises in this appeal, he failed to preserve the alleged error, and we may review only for plain error. Fed. R. Civ. P. 51(d)(2); *see Parkus v. Delo*, 135 F.3d 1232, 1234 (8th Cir. 1998). We see no obvious error in the absence of a jury instruction on a future injury claim that Christian never articulated and that finds little support in the evidence.

\* \* \*

The judgment of the district court is affirmed.

_____