# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1557
_____

Sam Edward Thurmond, Sr.

*Plaintiff - Appellee*

James Cunningham

*Plaintiff*

Rashan Dixon; Khalan Ellington; Bobby Ray Wyles, Jr.; Terry Don Beaver;
Jeremy Todd Haley

*Plaintiffs - Appellees*

v.

Gary Andrews, Lieutenant, Faulkner County Detention Facility; Chris
Riedmueller, Captain, Faulkner County Detention Facility (originally named as C Reedmiller)

*Defendants - Appellants*

Tim Ryals, Sheriff, Faulkner County Detention Facility

*Defendant*

Faulkner County

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: June 17, 2020
Filed: August 28, 2020
_____

Before LOKEN and GRASZ, Circuit Judges, and PITLYK[1], District Judge.
_____

GRASZ, Circuit Judge.

Six former inmates of the Faulkner County Detention Center sued Faulkner County, Arkansas, and two of the jail's employees under 42 U.S.C. § 1983. They claim their conditions of confinement were unconstitutional because of mold in and around the jail's shower. Both the employees and the County moved for summary judgment. The district court found a broad right to sanitary prison conditions to be clearly established, denied qualified immunity to the employees, and denied the County's summary judgment motion. Both the jail employees and the County now appeal. The jail employees argue they are entitled to summary judgment based on qualified immunity because the right at issue was not clearly established. And the County argues its motion for summary judgment was appropriate because no constitutional violation occurred. We reverse the denial of summary judgment as to the employees concluding they were entitled to qualified immunity, and find that we lack jurisdiction to reach the County's appeal.

## I. Background

Six former inmates at the Faulkner County Detention Center (the "jail") allege they were confined in unconstitutional living conditions during various periods between 2016 and 2018. Specifically, the inmates claim a "black mold" was present

_____

[1]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri, sitting by designation.

on the walls, ceilings, floors, and shower curtains of the showers that serviced a portion of the jail. In addition to allegations of mold, the plaintiffs also testified they were never given any cleaning supplies beyond a mop, brush, and bucket — never any cleaning chemicals.

It is disputed as to when the jail became aware of mold complaints. But the first written complaint in the record indicates that by February 2017, inmates were submitting written complaints alleging the presence of "black mold." And at some point after these written complaints, the jail began utilizing the labor from Act 309[2] inmates to powerwash the showers and apply a paint primer or sealer on the walls designed to block heavy stains and odors.

Lieutenant Gary Andrews testified that cleaning and inspections of the jail are a part of his job. He also explained that when he inspected the showers and observed some discoloration, he tried to use the primer/sealer to remedy the issue. According to Andrews, the Act 309 inmates power-washed twice a week and scrubbed the showers daily with a brush and cleaning materials. Jail Administrator Captain Chris Riedmueller oversaw the overall operations of the jail and talked with Andrews about the possible source of the unsightly stains in the shower.

In June 2017, the jail hired ATOKA, Inc., a professional engineering and environmental consulting company. ATOKA conducted a mold and indoor air quality assessment. The ATOKA report found no aerial mold problem, but did find

---

[2]"Act 309 of 1983 as amended is an inmate program operated by the Arkansas Department of Correction. The Director of the Department of Correction signs cooperative agreements with county and city officials for the purpose of providing additional space for the care and custody of State inmates on a temporary basis in detention facilities operated by counties and cities. The inmates may be used to work in and around governmental property/projects while under supervision of the sheriff or chief of police or designee." *Brown v. Moore*, 93 F. Supp. 3d 1032, 1037 n.4 (W.D. Ark. 2015).

that four of eleven surfaces tested contained a mold called Cladosporium — "a common indoor contaminant and the most common genera, worldwide. It is implicated as an allergen . . . ." The report concluded that the mold growth was confined to the areas that remain wet and that there was "no widespread, building-related mold problem." The report also contained a list of suggestions including sanitizing the showers with Perasan A and Perafoam (a two-product cleaning regimen of strong, chemical cleaning materials), limiting showering to specific time periods, and drying off surfaces after use.

When asked, Riedmueller admitted the jail did not implement the ATOKA report recommendations nor did it change its cleaning method. Andrews testified he had never read the report, but was briefed on the results.

Additionally, in preparation for the lawsuit, the inmates retained Dr. Jim Ingram, who is board certified in Pediatrics and Allergy and Immunology. Dr. Ingram tested each of the plaintiffs and found that only one was allergic to Cladosporium. He also testified that a person must be allergic to a mold before that mold would cause a person to be sick. But if a person was allergic to Cladosporium and was exposed to it, Dr. Ingram explained, he or she *could* suffer "deleterious health effects."

Both the individual jail employees and Faulkner County moved for summary judgment — the individuals asserting qualified immunity and the County asserting it had no policy or custom of constitutional violations. Defining the constitutional right at issue broadly, the district court found the inmates' right to sanitary prison conditions was clearly established, and also found there were genuine disputes of material fact as to whether Andrews and Riedmueller had violated those rights by acting with deliberate indifference or reckless disregard. Therefore, the district court found qualified immunity was improper, and denied summary judgment to Andrews, Riedmueller, and Faulkner County. Andrews and Riedmueller now appeal, arguing

they are entitled to qualified immunity because the conduct at issue does not violate a clearly established constitutional right. Likewise, the County now appeals, arguing it was also entitled to summary judgment because no constitutional violation occurred.

## II.  Analysis

We review a district court's denial of summary judgment based on qualified immunity de novo, reviewing the record in the light most favorable to the nonmoving parties and making all reasonable inferences in their favor. *Robinson v. Hawkins*, 937 F.3d 1128, 1135 (8th Cir. 2019).

In undertaking this interlocutory review for an order denying qualified immunity, our jurisdiction is limited. *Raines v. Counseling Assocs., Inc.*, 883 F.3d 1071, 1074 (8th Cir. 2018). "[W]e have authority to decide the purely legal issue of whether the facts alleged by the plaintiff are a violation of clearly established law." *Id.* (alteration in original) (quoting *Franklin ex rel. Franklin v. Peterson*, 878 F.3d 631, 635 (8th Cir. 2017)). "Appellate review in these circumstances is therefore limited to 'determin[ing] whether all of the conduct that the district court "deemed sufficiently supported for purposes of summary judgment" violated the plaintiff's clearly established federal rights.'" *Shannon v. Koehler*, 616 F.3d 855, 861 (8th Cir. 2010) (alteration in original) (quoting *Lockridge v. Bd. of Trs. of Univ. of Ark.*, 315 F.3d 1005, 1008 (8th Cir. 2003) (en banc)).

### A.  Individual Defendants

"Qualified immunity shields public officials from liability for civil damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dillard v. O'Kelley*, 961 F.3d 1048,

1052 (8th Cir. 2020) (en banc) (internal quotation marks omitted). We must therefore determine "(1) whether the facts shown by the plaintiff make out a violation of a constiutitonal or statutory right, and (2) whether that right was clearly established at the time of the defendant[s'] alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). We are permitted to decide which of these two prongs of qualified immunity to analyze first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Given both our limited jurisdiction and the presence of factual disputes in this case, we will begin and end our inquiry with the clearly established prong.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation omitted). We do not "define clearly established law at a high level of generality." *Dillard*, 961 F.3d at 1052 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). "Rather, we look for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

While prisoners certainly have an Eighth Amendment right to sanitary prison conditions including "reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," the articulation of this broad right does not answer whether the presence of non-toxic environmental allergens are necessarily violative of this right. *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). A more specific and particularized inquiry is necessary in order to assess clearly established law in the context of an assertion of qualified immunity. *Hamner v. Burls*, 937 F.3d 1171, 1179 (8th Cir. 2019).

The only thing clearly established in this case is that the definition of the asserted constiutitonal right embraced by the district court — a right to sanitary

prison conditions — was impermissibly broad. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (noting that "if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow* [*v. Fitzgerald*, 457 U.S. 800 (1982)]"). And the finding that such a right was clearly established based on this general definition was therefore in error.

Because the right at issue has not been properly defined and there are genuine disputes of material fact at play, it is not possible for us to determine whether the individual officers committed a constitutional violation in the Faulkner County Detention Center due to the presence of Cladosporium. To do so would require us to delve into genuinely disputed facts beyond our jurisdiction. This is not to say that there can never be a case in which the presence of mold or another environmental allergen may give rise to unsanitary prison conditions that violate inmates' Eighth Amendment rights. Nor does it mean that truly dangerous environmental conditions could not reach such a high level where the violation was obvious. *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). But that is not the case here.

Despite our limited ability to address whether a constiutitonal violation has occurred, we can still reach the second prong of the qualified immunity analysis. A grant of qualified immunity is inappropriate, absent an obvious violation, if the right was not clearly established. Here there is no controlling case and no robust consensus of persuasive authority able to place the question beyond debate.

Neither our research nor the parties' briefing uncovered any controlling Eighth Circuit cases addressing prison conditions and issues related to mold or other allergens more broadly. Instead, tangential and sparse references to mold or allergens in our precedent arise specifically in the adequate medical care context, and not the conditions of confinement context. *Cf. Christian v. Wagner*, 623 F.3d 608, 610, 612 (8th Cir. 2010) (explaining that a jury found the inmate did not have a serious medical

need after alleging an adverse reaction to a cleaning product, and affirming the denial of post-trial motions). As such, a reasonable officer could glean little to no guidance from Eighth Circuit precedent about how to address the presence of a common mold in the jail, especially at the levels alleged.

Likewise, there is a dearth of persuasive authority from outside the Eighth Circuit. Of the two published circuit-level cases, the Seventh Circuit's decision in *Budd v. Motley* is the most on point. 711 F.3d 840, 842 (7th Cir. 2013). In that case, the inmate alleged unconstitutional conditions of confinement including the presence of moldy toilets, but also went on to describe broken windows, rust, sinks without running water, spider webs, and a broken heating system. *Id.* Because the conditions in Faulkner County included none of these other extenuating circumstances, this case is clearly distinguishable. *See also Chandler v. Crosby*, 379 F.3d 1278, 1290–91 & n.22 (11th Cir. 2004) (defining the Eighth Amendment inquiry in a case involving "heat and ventilation" in a Florida prison specifically rather than as a generic prison condition case).

In short, we have not identified either "controlling authority" or a "robust consensus of persuasive authority" clearly establishing a right to be free from Cladosporium, mold, or other allergens in the prison context at the levels alleged here. The right in question, even if properly defined, was not clearly established. As such, a grant of qualified immunity was appropriate. We therefore reverse the district court's denial of summary judgment as to Andrews and Riedmueller.

## B. County Defendant

We now turn to Faulkner County's appeal from the district court's denial of its motion for summary judgment. Unlike the individual officers considered above, municipalities do not enjoy qualified immunity. *Mogard v. City of Milbank*, 932 F.3d 1184, 1192 (8th Cir. 2019). If we had held that no constitutional violation occurred

here, then Faulkner County may be correct in asserting that we would also have to conclude that the "inextricably intertwined" claim against the County fails as a matter of law. *See Manning v. Cotton*, 862 F.3d 663, 671 (8th Cir. 2017).

But that is not our holding. Rather, we hold only that the individual jail employees are immune from suit because their actions did not violate clearly established law. This conclusion does not necessarily mean Faulkner County did not violate the rights of the plaintiffs, and so the determination of liability does not flow from the resolution of the qualified immunity issue.[3] Because the determination of Faulkner County's liability does not "flow ineluctably from a resolution of the qualified-immunity issue, the question of whether [the County] is liable for failing to train its officers is not inextricably intertwined with the matter of qualified immunity." *Ivey v. Audrain Cnty.*, No. 19-2507, 2020 WL 4458776, at *4 (8th Cir. Aug. 4, 2020). As such, we lack jurisdiction to hear the County's appeal. *Id.*

## III. Conclusion

For the foregoing reasons, the order of the district court is reversed and the case is remanded for proceedings consistent with this opinion.

_____

_____

[3]We have held in the past that the lack of a clearly established right can, in some instances, foreclose a plaintiff's claim of municipal liability. *See Szabla v. City of Brooklyn Park*, 486 F.3d 385, 393–94 (8th Cir. 2007) (en banc). As that issue was neither briefed nor argued here, we leave it for initial consideration by the district court on remand.