# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-2571
_____

Sally Ness,

*Plaintiff - Appellant*,

v.

City of Bloomington; Michael O. Freeman, in his official capacity as Hennepin County Attorney; Troy Meyer, individually and in his official capacity as a police officer, City of Bloomington; Mike Roepke, individually and in his official capacity as a police officer, City of Bloomington,

*Defendants - Appellees*,

Attorney General's Office for the State of Minnesota,

*Intervenor below - Appellee.*

_____

Buzzfeed Inc.; The E.W. Scripps Company; First Look Media Works, Inc.; Fox Television Stations, LLC; The International Documentary Association; The McClatchy Company; MPA - The Association of Magazine Media; National Geographic Partners LLC; National Press Photographers Association; National Public Radio,Inc.; News Leaders Association; POLITICO LLC; Radio Television Digital News Association; Society of Environmental Journalists; Society of Professional Journalists; The Tully Center for Free Speech; Reporters Committee for Freedom of the Press,

*Amici on Behalf of Appellant.*

_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: May 12, 2021
Filed: September 2, 2021
_____

Before COLLOTON, WOLLMAN, and KOBES, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Sally Ness is embroiled in a dispute with the City of Bloomington, Minnesota, over Ness's desire to produce photographs and video recordings of activities in a public park, where the images captured would include children. Ness seeks to undertake these acts in order to comment publicly on a dispute with city authorities over use of the park.

Ness sued the City of Bloomington, the Hennepin County Attorney, and two Bloomington police officers. She sought a declaration that a state harassment statute and a city ordinance are unconstitutional under the First Amendment, injunctive relief against enforcement of those laws, and nominal damages. The district court granted the defendants' motions to dismiss the complaint, and denied Ness's motion for summary judgment.

On Ness's appeal, we dismiss as moot her challenge to the harassment statute, which has been superseded by the state legislature. We affirm the dismissal as to the claims for damages against the police officers and the City based on alleged enforcement of the former harassment statute. But we reverse and direct entry of judgment for Ness on her claim that the city ordinance forbidding photography and

video recording in the public park is unconstitutional under the First Amendment as applied to her activity on which the claim is based.

I.

In 2011, the Bloomington City Council approved a conditional use permit for the Al Farooq Youth and Family Center to operate a school, day care, and place of assembly at a property adjacent to a public park called Smith Park. A joint use agreement governs the sharing of parking facilities between the City and the Center, and allows the Center to use Smith Park for its programs. A charter school, Success Academy, opened on the Center's property in 2017. The school uses Smith Park for recess.

Ness is a Bloomington resident who lives in the Smith Park neighborhood. She describes herself as the "point person" for delivering neighborhood concerns to the City about the Center's alleged violations of its agreements related to use of the park and the parking spaces surrounding the park. Ness records videos and takes photographs from public sidewalks and streets around the park, the driveways of homes across the street from the park, and within the park itself. She documents her concerns by posting the photographs and videos on a Facebook page and an internet blog.

In August 2018, someone lodged a formal complaint against Ness for possible violations of the harassment statute, Minn. Stat. § 609.749 (2019), based on her recording and photography at Smith Park. The City did not file charges against Ness at the time.

In August 2019, Bloomington police officers Meyer and Roepke approached Ness while she was video recording activities relating to alleged violations of the joint use agreement near the Center. The officers were investigating a harassment

complaint filed by the principal of Success Academy and the parent of a student. The officers warned Ness that she could be arrested for violating the harassment statute if children felt threatened or intimidated by her filming, regardless of her intent. According to Officer Meyer's report, he asked Ness to "stop filming."

In October 2019, two city police detectives and a community liaison met with Ness at her home. The detectives informed Ness that she was a "suspect" in a "harassment case," based on her recording of alleged overuse and noncompliant use of Smith Park by the Center and the school. Neither the County nor the City prosecuted Ness under the harassment statute.

Also in October 2019, the City Council approved an ordinance proscribing the photography and recording of children in city parks. The ordinance provides that in city parks, "[n]o person shall intentionally take a photograph or otherwise record a child without the consent of the child's parent or guardian." Bloomington, Minn., City Code § 5.21(23). A violation is punished as a petty misdemeanor. *See id.* § 5.22.

In November 2019, Ness sued the City of Bloomington, the Hennepin County Attorney, Seargant Roepke, and Officer Meyer under 42 U.S.C. § 1983. She alleged violations of the First and Fourteenth Amendments. Ness sought a declaration that Minnesota's 2019 harassment statute and the Bloomington ordinance are unconstitutional on their face and as applied to her. She also requested injunctive relief and nominal damages. The Minnesota Attorney General intervened to defend the constitutionality of the harassment statute. *See* 28 U.S.C. § 2403(b); Fed. R. Civ. P. 5.1(c).

The defendants moved to dismiss the complaint, and Ness moved for summary judgment. The district court granted the motions to dismiss, and denied Ness's motion. The court determined that Ness lacked standing to challenge the

constitutionality of the harassment statute, that the officers were entitled to qualified immunity for their alleged threat to enforce the harassment statute in August 2019, and that the complaint failed plausibly to allege that the city ordinance was unconstitutional under the First Amendment. In reviewing the sufficiency of the complaint, we take the factual allegations as true and consider whether they plausibly allege a violation of the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the denial of Ness's motion for summary judgment, we consider the evidentiary submissions in the district court, taking the evidence in the light most favorable to the nonmovants. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II.

On appeal, Ness first contests the dismissal of her challenge to the Minnesota harassment statute, Minn. Stat. § 609.749. She maintains that the district court erred in concluding that she lacks standing to challenge the statute's constitutionality. The county attorney and the State argue that Ness's claim for injunctive relief against enforcement of the statute is moot.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation omitted). When the challenged "law has been amended or repealed, actions seeking . . . injunctive relief for earlier versions are generally moot unless the problems are capable of repetition yet evading review." *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687 (8th Cir. 2012) (en banc) (alteration and internal quotation omitted). If the amended statute disadvantages a plaintiff in the "same fundamental way" as the old statute, claims for injunctive relief remain justiciable. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662-63 (1993).

-5-

Ness's claim for injunctive relief against the harassment statute is moot. The Minnesota legislature amended the harassment statute in 2020. *See* 2020 Minn. Laws 434-35. As to one element, the 2019 and 2020 statutes are similar: both provide that a person commits the offense of harassment if she "follows, monitors, or pursues another, whether in person or through any available technological or other means." Minn. Stat. § 609.749, subdiv. 2(c)(2) (2020); *id.* § 609.749, subdiv. 2(2) (2019). But there is also a significant difference: the 2019 statute did not require proof of specific intent. Under the old law, the State could prove a violation by showing merely that "the actor knows or has reason to know" that her conduct "would cause the victim . . . to feel frightened, threatened, oppressed, persecuted, or intimidated." *Id.* § 609.749, subdiv. 1 (2019). Under the 2020 statute, the State must show that a person's act is undertaken with "the intent to kill, injure, harass, or intimidate another person." *Id.* § 609.749, subdiv. 2(b) (2020).

Ness argued in district court that the 2019 harassment statute was unconstitutional because it lacked an intent requirement—that is, she could be prosecuted "regardless of whether [she] intends to make the victim feel" threatened. Ness does not intend to harass anyone; she wants to monitor "parking and traffic violations and the excessive use" of the Center's "facilities" and Smith Park. The 2020 statute requires a showing of specific intent, and thus does not disadvantage Ness in the "same fundamental way" as the old statute. Ness's claim for injunctive relief against the 2019 harassment statute is therefore moot. *See SD Voice v. Noem*, 987 F.3d 1186, 1189-90 (8th Cir. 2021).

On appeal, Ness also asks for injunctive relief against the 2020 harassment statute, but her complaint did not challenge the 2020 statute, the district court did not address it, and we decline to address its constitutionality for the first time on appeal. *Libertarian Party of Ark. v. Martin*, 876 F.3d 948, 951-52 (8th Cir. 2017). Because we conclude that Ness's claim for injunctive relief is moot, we need not address

whether Ness lacks Article III standing to seek such relief. *See Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1281 n.3 (11th Cir. 2004).

## III.

Ness next contends that she stated a claim for a violation of her First Amendment rights and entitlement to nominal damages based on threats to enforce the 2019 harassment statute. She argues that the City and the police officers unlawfully used the statute to "silence" her.

### A.

We first consider Ness's claim against Sergeant Roepke and Officer Meyer in their individual capacities. Ness alleges that she stopped making recordings after the officers threatened to enforce Minnesota's harassment statute against her during their August 2019 encounter. The district court dismissed the claim on the ground that the officers are entitled to qualified immunity.

When defendants assert that they are entitled to qualified immunity from a civil damages suit brought under 42 U.S.C. § 1983, the plaintiff must show that the defendants violated a constitutional right that was "clearly established" at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A right is clearly established if the law was sufficiently clear such that "every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation omitted).

Ness contends that the officers' threat to enforce the harassment statute against her for filming children in and around Smith Park violated her "right to film." She alleges that Meyer and Roepke told her that if she continued with her videotaping, and the complainants felt harassed or threatened by her activity, then Ness would be

subject to arrest regardless of her intentions. She alleges that she "ceased" her recording activity as a result of the encounter.

The officers, however, reasonably relied on Minnesota's harassment statute in warning Ness that her video recording may constitute harassment. At the time, the statute permitted a conviction on proof that "the actor knows or has reason to know" that the conduct "would cause the victim . . . to feel frightened, threatened, oppressed, persecuted, or intimidated." Minn. Stat. § 609.749, subdiv. 1 (2019). Consistent with the statute, the officers allegedly informed Ness that her actions had caused the school principal and a parent to feel intimidated and scared. They allegedly warned Ness that she could be arrested for harassment if the complainants felt harassed or threatened by her continued videotaping.

The reliance on a state statute that has not been declared unconstitutional is generally a paradigmatic example of reasonableness that entitles an officer to qualified immunity. *See Landrum v. Moats*, 576 F.2d 1320, 1327 n.14 (8th Cir. 1978) (citing *Pierson v. Ray*, 386 U.S. 547, 556-57 (1967)); *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440-43 (6th Cir. 2016); *Cooper v. Dillon*, 403 F.3d 1208, 1220-21 (11th Cir. 2005). When a legislative body establishes a law, the enactment "forecloses speculation by enforcement officers concerning its constitutionality," unless the law is "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). Police officers are not trained as constitutional lawyers. The alleged flaws in the 2019 harassment statute are not so "gross" and "flagrant" that no reasonable police officer could have believed that it was constitutional. Thus, the district court did not err in dismissing the claims against the officers based on qualified immunity.

B.

Ness also argues that she stated a claim for nominal damages against the City and the officers in their official capacities. Claims under 42 U.S.C. § 1983 against municipal officials in their official capacities are treated as claims against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). On these claims, the district court granted the City's motion to dismiss without elaboration.

Under § 1983, a plaintiff cannot state a claim against a municipality for money damages on a *respondeat superior* theory, but must instead show that a "policy or custom" of the municipality caused a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipal liability attaches only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Ness alleges that the City and the officers were "acting under color of state law" when enforcing the harassment statute. But she fails to allege that a city policymaker adopted the *state* harassment statute as the official policy of the *City* of Bloomington, or that the City has a policy or custom of enforcing the statute in an unconstitutional manner. The complaint does not allege that the City incorporated the state statute into its municipal code, or that a policymaker like the chief of police was responsible for the enforcement action. *Cf. Cooper*, 403 F.3d at 1222-23. We decline to make the "conceptual leap" that the enforcement of a state statute by city police officers supports a claim that the alleged unconstitutional statute was adopted as a city policy. *Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 790-92 (7th Cir. 1991). "It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law." *Id*. at 791.

Ness's claim against the City for nominal damages is therefore premised on making the municipality vicariously liable for the actions of its police officers. Her complaint states that she "ceased her filming activity," because of the August 2019 "threat by the City, through its police officers Defendants Meyer and Roepke, to enforce the Harassment Statute." The complaint further alleges that the detectives' visit to her home in October 2019 "confirmed" her "fears" that she would be prosecuted under the harassment statute. Because these allegations are based on the actions of city employees and not on a policy or custom of the City, Ness's claim for nominal damages is insufficient to state a claim. *Monell*, 436 U.S. at 691-94.

IV.

Ness also challenges the constitutionality of the city ordinance. The disputed ordinance provides that in city parks, "[n]o person shall intentionally take a photograph or otherwise record a child without the consent of the child's parent or guardian." Bloomington, Minn., City Code § 5.21(23). The district court granted the City's motion to dismiss, but Ness argues that she was entitled to summary judgment that the ordinance is unconstitutional on its face and as applied to her activity under the First Amendment.

Ness claims that the ordinance is unconstitutional as applied to her photography and video recording of matters of public controversy for dissemination on the internet. The City and Ness dispute whether the ordinance prohibits speech or merely proscribes conduct. Even if we assume that the ordinance on its face does not aim at the suppression of speech, the ordinance operates to restrict speech in this case.

Whether the ordinance proscribes speech, conduct, or both depends on the particular activity in which an actor seeks to engage. If the act of making a photograph or recording is to facilitate speech that will follow, the act is a step in the

-10-

"speech process," and thus qualifies itself as speech protected by the First Amendment. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 336-37 (2010); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595-97 (7th Cir. 2012). If the photography or recording is unrelated to an expressive purpose, or if the ordinance prohibits conduct that imposes incidental burdens on speech, then the act of recording may not receive First Amendment protection. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011); *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006).

Applying the distinction between speech and conduct to this case, we conclude that Ness's photography and video recording is speech. Ness wants to photograph and record the asserted "noncompliant and overuse of Smith Park" by the Center and Success Academy, and she wants to post those photographs and videos to an internet blog and a Facebook page "in order to inform the public" about the controversy. Thus, her photography and recording is analogous to news gathering. The acts of taking photographs and recording videos are entitled to First Amendment protection because they are an important stage of the speech process that ends with the dissemination of information about a public controversy. *See Alvarez*, 679 F.3d at 597-601; *cf. Branzburg v. Hayes*, 408 U.S. 665, 681 (1972) (stating that news gathering receives "some protection" under the First Amendment).

We next consider the level of scrutiny applicable to the ordinance. A public park is a traditional public forum. *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983). Content-neutral time, place, and manner restrictions are permitted in traditional public fora if the restrictions "are narrowly tailored to serve a significant governmental interest." *McCullen v. Coakley*, 573 U.S. 464, 477 (2014) (internal quotation omitted). Content-based restrictions, however, "are presumptively unconstitutional" and must satisfy strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015). To enforce a content-based restriction, the government must

show that the restriction "furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* at 171 (internal quotation omitted).

Ness maintains that the ordinance is a content-based restriction as applied to her photography and filming, while the City contends that the ordinance operates as a time, place, and manner restriction. We agree with Ness, because city officials must examine the content of the speech to determine whether it is prohibited. *See id.* at 163-64; *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984). To determine whether Ness's photography or recording in a park is proscribed by the ordinance, an official must examine the content of the photograph or video recording to determine whether a child's image is captured. Thus, the ordinance is content-based as applied to the facts of this case.

Even though the ordinance is content-based, the City may still enforce it against Ness if the restriction furthers a compelling government interest and is narrowly tailored to that end. *Reed*, 576 U.S. at 171. The City contends that it has a compelling interest in "protecting children from intimidation or exploitation," and that the ordinance proscribes "potentially frightening interactions with children."

We may assume that a narrowly tailored ordinance aimed at protecting children from intimidation and exploitation could pass strict scrutiny. The present ordinance, however, is not narrowly tailored to that end as applied to Ness. Ness seeks to photograph and video record a matter of public interest—purported violations of permits issued by the City—and does not intend to harass, intimidate, or exploit children. Ness also advised the City that it was her practice to "block" out the identities of juveniles when she posts images online, and the City produced no evidence to the contrary. *See* R. Doc. 31, at 29-30; R. Doc. 20, at 3-4 ¶ 13; *see City Manager, "Cones to Keep the Kids Going Safely," Pictures Indicate Differently*, 5 Years Later Blog (Jan. 12, 2019), https://5yearsofcollectingdata.weebly.com/blog/

-12-

city-manager-cones-to-keep-the-kids-going-safely-pictures-indicate-differently. Yet her photography and recording is nonetheless proscribed by the ordinance.

Because the ordinance is significantly overinclusive with respect to the City's asserted interest, it is not narrowly tailored and fails strict scrutiny as applied to Ness's proposed conduct. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 804 (2011); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 122-23 (1991). We therefore conclude that the ordinance, as applied to Ness's activity that forms the basis for this lawsuit, is unconstitutional under the First Amendment. Ness is entitled to judgment to that extent. Ness also seeks a declaration that the ordinance is unconstitutional on its face, but we need not address that contention. We apply the rule that "a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502 (1985); *see United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 477-78 (1995); *Jacobsen v. Howard*, 109 F.3d 1268, 1274-75 (8th Cir. 1997).

\*      \*      \*

The judgment of the district court is affirmed insofar as it dismissed Ness's claims against Officers Meyer and Roepke and her claim for nominal damages against the City with respect to the past enforcement of Minn. Stat. § 609.749 (2019). We dismiss as moot Ness's appeal of the dismissal of her claim for injunctive relief against enforcement of Minn. Stat. § 609.749 (2019). We remand for the entry of judgment for Ness on her claim that Section 5.21(23) of Bloomington's City Code is unconstitutional as applied to Ness's photography and video recording of matters relating to a public controversy at Smith Park on which she based this lawsuit.

———————————————