# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3435
_____

City Union Mission, Inc.

*Plaintiff - Appellant*

v.

Sheriff Mike Sharp; Jackson County Sheriff's Office; Jackson County, Missouri

*Defendants - Appellees*

State of Missouri

*Intervenor - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: September 23, 2021
Filed: June 10, 2022
_____

Before SHEPHERD, WOLLMAN, and KOBES, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

City Union Mission is a Kansas City, Missouri nonprofit organization located near Margaret Kemp Park that provides food, shelter, employment, and a Christian discipleship program to poor and homeless individuals. A Missouri law prohibits

persons convicted of certain sex offenses (Affected Persons) from being present in or loitering within 500 feet of any public park containing playground equipment. After the Jackson County Sheriff's Office informed City Union Mission that the statute prohibited some of its guests from being present within 500 feet of the park, even when receiving City Union Mission's charitable services, City Union Mission filed suit, bringing 12 claims against the Jackson County Sheriff's Office, Jackson County, and Sheriff Mike Sharp in his official capacity (collectively, the County), as well as one claim against Sheriff Sharp in his individual capacity. The State of Missouri (the State) intervened, and the district court[1] ultimately dismissed City Union Mission's 12 claims against the County and granted summary judgment on City Union Mission's claim against Sheriff Sharp in his individual capacity, finding that Sheriff Sharp was entitled to qualified immunity. City Union Mission appeals, and having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

City Union Mission is a faith-based nonprofit organization that has operated for over nine decades and serves Kansas City's poorest individuals. Its services include providing meals, overnight shelter, and occasionally, employment. City Union Mission also offers a one-year, biblically based discipleship and rehabilitation program called the Christian Life Program (CLP) for men seeking help with life skills and addiction. City Union Mission occupies several properties, with a shelter at 1108 East 10th Street, the CLP program at 1111 East 10th Street, and its headquarters at 1100 East 11th Street. Margaret Kemp Park, a park containing playground equipment, is also located on 10th Street and is within 500 feet of City Union Mission's shelter and headquarters locations.

Missouri law provides in relevant part that "[a]ny person who has been found guilty of [certain enumerated sex crimes] . . . shall not knowingly be present in or

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

loiter within five hundred feet of any real property comprising any public park with playground equipment . . . if such facilities exist for the primary use of recreation for children." Mo. Rev. Stat. § 566.150. Some of City Union Mission's guests are Affected Persons. In May 2016, the Jackson County Sheriff's Office began interpreting this statutory language as prohibiting Affected Persons from being present at any of City Union Mission's 3 locations because 2 of those locations are within 500 feet of Margaret Kemp Park (the May 2016 Position). City Union Mission alleged in its complaint that the Jackson County Sheriff's Office "prohibited . . . Affected Persons [from] be[ing] present on any [City Union] Mission land . . . , even land outside the [500-foot] Zone," and because of the May 2016 Position, City Union Mission "lost use of its facilities, as it could not minister to Affected Persons on [City Union] Mission land" and "was denied the use of its facilities, and prevented from offering services or help to Affected Persons, because [City Union] Mission could be charged with conspiracy or aiding and abetting a violation of § 566.150." R. Doc. 1, at 10.

In September 2016, an officer from the Jackson County Sheriff's Office emailed City Union Mission, explaining that the Jackson County Sheriff's Office had revised its May 2016 Position and would now enforce the statute only against Affected Persons present within 500 feet of Margaret Kemp Park, allowing City Union Mission to provide services to Affected Persons at its 1111 East 10th Street location but not at its other 2 locations. See R. Doc. 1, at 11. In February 2017, an officer from the Jackson County Sheriff's Office alerted City Union Mission that Affected Persons were prohibited from maintaining employment at the 1108 East 10th Street location. See R. Doc. 1, at 11-12 (alleging Jackson County Sheriff's Office indicated that it "would issue a citation if the matter were not 'cleared up'"). In its complaint, City Union Mission alleged that because of the Jackson County Sheriff's Office's interpretations, it had to reassign an Affected Person employed at the 1108 East 10th Street location, post signs in its facilities alerting Affected Persons of the Jackson County Sheriff's Office's interpretation, "[o]pen its doors for 'sweeps' by the Sheriff's deputies," turn away Affected Persons seeking its services, and discontinue services for Affected Persons. See R. Doc. 1, at 12. Although City

-3-

Union Mission asked the Jackson County Sheriff's Office to reconsider its interpretations and promise not to prosecute City Union Mission for aiding and abetting Affected Persons in violating the statute, the parties could not reach a resolution.

City Union Mission brought 12 claims against the County. Claims 1-6 were brought pursuant to 42 U.S.C. § 1983, asserting: a First Amendment Free Exercise Clause claim (Claim 1); a void-for-vagueness challenge pursuant to the First and Fourteenth Amendments (Claim 2); an as-applied challenge pursuant to the First and Fourteenth Amendments (Claim 3); a First Amendment Freedom of Assembly and Association Clauses claim (Claim 4); a First Amendment Establishment Clause claim (Claim 5); and a First and Fourteenth Amendment Free Exercise, Due Process, and Equal Protection Clauses claim and a First and Fourteenth Amendment discriminatory targeting claim (Claim 6). In Claims 7-12, City Union Mission brought: a Religious Land Use and Institutionalized Persons Act (RLUIPA) "substantial burden" claim (Claim 7); a RLUIPA "equal terms" claim (Claim 8); a RLUIPA "discrimination" claim (Claim 9); a RLUIPA "unreasonable limitations" claim (Claim 10); a Missouri Religious Freedom Restoration Act (Missouri RFRA) claim (Claim 11); and a claim under Article I, §§ 2, 5, 9, and 10 of the Missouri Constitution (Claim 12). City Union Mission also brought a claim against Sheriff Sharp in his individual capacity, alleging that Sheriff Sharp violated the First Amendment Free Exercise Clause (Claim 13). City Union Mission sought a preliminary injunction against all defendants, as well as a declaratory judgment that the statute was unconstitutionally vague, violated state or federal law, or was unconstitutional as applied to City Union Mission and its employees and guests. In Claim 13, City Union Mission sought nominal and actual damages from Sheriff Sharp individually.

Because the constitutionality of the state statute was called into question, the State intervened and moved to dismiss Claims 1-12 pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. The County similarly moved to dismiss Claims 1-13. The district court granted the

-4-

State's motion to dismiss, explaining that § 566.150 does not proscribe City Union Mission's conduct and that City Union Mission therefore failed to state a claim upon which relief could be granted. It denied both the County's motion to dismiss and City Union Mission's request for a preliminary injunction as moot. City Union Mission then filed a motion with the district court requesting that the district court amend its judgment or, alternatively, reconsider. The district court granted City Union Mission's motion to reconsider. In its amended order, the district court reaffirmed its grant of the State's motion to dismiss Claims 1-12, again denied the County's motion to dismiss as moot, but granted City Union Mission's motion for a preliminary injunction enjoining all defendants from enforcing or threatening to enforce § 566.150 against City Union Mission or Affected Persons. At some point during the pendency of this lawsuit, Sheriff Sharp resigned. After Sheriff Sharp's resignation, City Union Mission filed a motion with the district court asking the district court to convert the preliminary injunction against the defendants into a permanent injunction against Sheriff Sharp and Jackson County. The district court denied this motion. See R. Doc. 113, at 4-7.

Following discovery, Sheriff Sharp filed a motion for summary judgment on City Union Mission's claim for damages against him in his individual capacity, arguing that he was entitled to qualified immunity. The district court found that Sheriff Sharp was entitled to qualified immunity, explaining that, at the time of enforcement of the statute, there was no clearly established constitutional right for City Union Mission to provide religious services to Affected Persons within 500 feet of a park. See R. Doc. 135, at 5. The district court also explained that "there is no basis to conclude that" Affected Persons receiving City Union Mission's services were not loitering. See R. Doc. 135, at 5.

## II.

City Union Mission now appeals the district court's dismissal of its claims against the County and its grant of summary judgment in favor of Sheriff Sharp.

-5-

A.

We first consider whether the district court erred in dismissing City Union Mission's 12 claims against the County, in which City Union Mission sought a declaration that § 566.150 is unconstitutional as applied and that § 566.150 violates the RLUIPA, Missouri's RFRA, and the Missouri Constitution, as well as permanent injunctive relief enjoining Sheriff Sharp and Jackson County from "enforcing or threatening to enforce" § 566.150 against City Union Mission or Affected Persons.[2] We apply a de novo standard of review, accept City Union Mission's factual allegations found in its complaint as true, and resolve all reasonable inferences in favor of City Union Mission. See Park Irmat Drug Corp. v. Express Scripts Holding Co., 911 F.3d 505, 512 (8th Cir. 2018).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A claim is facially plausible where the complaint contains enough facts such that the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1063 (8th Cir. 2017) (alteration in original) (quoting Iqbal, 556 U.S. at 678). This is a "context-specific task" in which we must draw on our "judicial experience and common sense." See McDonough v. Anoka Cnty., 799 F.3d 931, 945 (8th Cir. 2015) (quoting Iqbal, 556 U.S. at 679).

First, we conclude that City Union Mission's claims seeking broad injunctive relief prohibiting Sheriff Sharp and Jackson County from "enforcing or threatening to enforce" § 566.150 against City Union Mission or Affected Persons are moot.

_____

[2]At oral argument, City Union Mission abandoned its claim that the statute is unconstitutional on its face.

Sheriff Sharp has resigned and is no longer in a position to interpret and enforce § 566.150. Further, at oral argument, the County took the position that it will not revive Sheriff Sharp's interpretation of § 566.150 or prosecute Affected Persons for seeking City Union Mission's services. City Union Mission does not contend that the County's concession should not be accepted. Because "[f]ederal courts are not empowered 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it,'" we cannot issue the injunctive relief City Union Mission requests. See Republican Party of Minn. v. Klobuchar, 381 F.3d 785, 790 (8th Cir. 2004) (citation omitted). The claims for injunctive relief should be dismissed.

Further, all parties agree that City Union Mission does not provide services in Margaret Kemp Park, so the only language in § 566.150 potentially proscribing City Union Mission's activities is that which prohibits Affected Persons from knowingly loitering within 500 feet of a park. See Mo. Rev. Stat. § 566.150 (prohibiting Affected Persons from "knowingly be[ing] present in or loiter[ing] within five hundred feet of . . . any public park with playground equipment"). However, as the district court correctly noted, City Union Mission failed to allege in its complaint that Affected Persons receiving its services are "loitering." In fact, in its complaint, City Union Mission expressly disclaimed that Affected Persons are loitering, stating: "Plaintiff [City Union] Mission's guests and clients, including Affected Persons, while receiving or providing ministry services on [City Union] Mission premises, or travelling to or from the [City Union] Mission for such ministry services, are not . . . 'loitering' within 500 feet of the park." See R. Doc. 1, at 12. Further, in its briefing before this Court, City Union Mission argued that "[c]learly established law showed that persons availing themselves of ministry services or employment opportunities at City Union Mission were not loitering," see Appellant Br. 39, and at oral argument, City Union Mission, the County, and the State all agreed that when § 566.150 is properly interpreted, Affected Persons are not "loitering" when they are visiting City Union Mission's properties to obtain shelter, worship, work, or otherwise receive City Union Mission's charitable services, rendering § 566.150 inapplicable. Because City Union Mission has not alleged—in fact, has expressly

and repeatedly disavowed—that the statute applies to it, we cannot see how it has stated a claim capable of surviving a motion to dismiss. As the district court explained, "[i]n the absence of factual allegations giving rise to the reasonable inference that Affected Persons seeking [City Union] Mission's services within 500 feet of a park with playground equipment are *loitering*, [City Union] Mission does not state a claim to challenge the constitutionality of § 566.150's loitering provision." See R. Doc. 63, at 6. We agree and affirm the district court's dismissal of City Union Mission's remaining claims against the County.

B.

Having resolved Claims 1-12, we move to the district court's grant of summary judgment in favor of Sheriff Sharp on Claim 13, applying a de novo standard of review. See Dowden v. Cornerstone Nat'l Ins. Co., 11 F.4th 866, 872 (8th Cir. 2021). City Union Mission brought a First Amendment claim against Sheriff Sharp pursuant to § 1983, alleging Sheriff Sharp violated its First Amendment right to engage in religious ministry and, in addition to the injunctive relief sought against all defendants, also sought nominal and actual damages. Following discovery, Sheriff Sharp filed a motion for summary judgment and argued that he was entitled to summary judgment based on qualified immunity. The district court granted summary judgment, resolving its qualified immunity analysis on the clearly established prong and finding that Sheriff Sharp was entitled to qualified immunity. See R. Doc. 135, at 5. We agree.

"In determining whether an officer is entitled to qualified immunity, we apply the familiar two-prong framework: first, 'whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right,' and second, 'whether the right was clearly established at the time of the alleged infraction.'" Garang v. City of Ames, 2 F.4th 1115, 1121 (8th Cir. 2021) (citation omitted). We are free to decide which prong to address first, and unless we find both that the plaintiff has stated a plausible claim for violation of a constitutional or statutory right *and* the right was

clearly established at the time of the infraction, the defendant-officer is entitled to qualified immunity. See Nord v. Walsh Cnty., 757 F.3d 734, 738-39 (8th Cir. 2014).

Here we begin with the second prong, asking whether, in 2016, City Union Mission's right to provide services to Affected Persons in a building located within 500 feet of a park with playground equipment was clearly established "such that 'every reasonable official would understand that what he is doing is unlawful.'" Ness v. City of Bloomington, 11 F.4th 914, 921 (8th Cir. 2021) (citation omitted). When determining whether a right is clearly established, we do not view the law with a high level of generality but instead "look for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" See Thurmond v. Andrews, 972 F.3d 1007, 1012 (8th Cir. 2020) (citations omitted).

City Union Mission does not direct us to any case that clearly establishes its constitutional right to provide services to Affected Persons within 500 feet of a park with playground equipment. In its brief in this Court, City Union Mission begins by citing two Supreme Court cases, Sause v. Bauer, 138 S. Ct. 2561 (2018), and Nieves v. Bartlett, 139 S. Ct. 1715 (2019), for the proposition that "[t]he right to engage in First Amendment religious activity in a private building . . . is clearly established." See Appellant Br. 39. City Union Mission then directs us to cases like City of Chicago v. Morales, 527 U.S. 41 (1999), and Fields v. City of Omaha, 810 F.2d 830 (8th Cir. 1987), for the proposition that loitering, absent any criminal activity, is constitutionally protected. However, these cases are not instructive. We are not tasked with deciding whether the right to engage in First Amendment religious activity in a private building or to loiter is clearly established. Instead, the at-issue right is more complex: Section 566.150 is intended to protect children from Affected Persons by prohibiting Affected Persons from loitering within 500 feet of Margaret Kemp Park; Affected Persons wish to engage in religious activity and to receive services at City Union Mission; and two of City Union Mission's properties are within 500 feet of Margaret Kemp Park. Sheriff Sharp was necessarily required to

-9-

weigh these competing interests and determine how to apply § 566.150, and we can find no "controlling case" or "robust consensus of cases of persuasive authority" that would have notified Sheriff Sharp that Affected Persons had a clearly established right to seek City Union Mission's services in a building located within 500 feet of a park containing playground equipment. See Thurmond, 972 F.3d at 1012 (citation omitted); see also Ness, 11 F.4th at 921 (requiring the right to be clearly established "such that 'every reasonable official would understand that what he is doing is unlawful'" (citation omitted)). We do not decide whether City Union Mission has stated a plausible claim for a violation of a constitutional right because, even assuming that it has, Sheriff Sharp is nevertheless entitled to qualified immunity. See Nord, 757 F.3d at 738-39. And, finding that Sheriff Sharp is entitled to qualified immunity, we affirm the district court's grant of summary judgment.[3]

## III.

For the foregoing reasons, we affirm.

KOBES, Circuit Judge, concurring in part and concurring in the judgment.

The Supreme Court has repeatedly held that "loitering bans" are unconstitutional under the Due Process Clause. *See, e.g.*, *Papachristou v. City of*

---

[3]In its argument in this Court, City Union Mission does not focus on the May 2016 Position, under which Sheriff Sharp prohibited all Affected Persons from entering all City Union Mission properties, even the property located further than 500 feet from Margaret Kemp Park. City Union Mission also does not reframe the question posed by the district court during its qualified immunity analysis: whether there was a clearly established constitutional right to free exercise within 500 feet of Margaret Kemp Park. See Appellant Br. 37-38. Instead, City Union Mission argues only that it "had a clearly established constitutional right . . . to engage in free exercise of religion within 500 feet of a park with playground equipment." Appellant Br. 37. Therefore, we consider only whether the right to provide services to Affected Persons within 500 feet of Margaret Kemp Park was clearly established, not whether the right to provide services to Affected Persons further than 500 feet from Margaret Kemp Park was clearly established.

*Jacksonville*, 405 U.S. 156, 171 (1972). It makes no difference that Missouri's loitering ban only applies to certain sex offenders, *see City of Chicago v. Morales*, 527 U.S. 41, 73 (1999) (plurality opinion) (enjoining loitering law for gang members), or that the law is geographically limited, *see Bell v. City of Winter Park*, 745 F.3d 1318, 1325 (11th Cir. 2014) (holding that fifty-foot buffer zone that prohibited loitering was unconstitutional). And, contrary to the majority, I don't think the fact that City Union Mission has "expressly and repeatedly disavowed" that its members were loitering means it can't challenge the statute. The very reason that loitering bans are unconstitutional is that *no one* can give a precise definition of "loitering," allowing law enforcement to perform "arbitrary and erratic arrests and convictions." *Papachristou*, 405 U.S. at 162.

I concur in the judgment, however, because I agree that City Union Mission's claim is moot. City Union Mission requested an injunction preventing Jackson County from enforcing § 566.150 against its members while they are participating in religious services. But as the majority notes, both the County and the State have expressly stated that the law doesn't apply to City Union Mission's members during worship. Additionally, both the County and the State have said they have no plans to enforce the law against City Union Mission. And Sheriff Sharp, who led the initial "sweep" of arrests at City Union Mission, has since left office. Accordingly, the unconstitutional conduct alleged by City Union Mission "could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). City Union Mission's requested injunctive relief is therefore moot. *See Prowse v. Payne*, 984 F.3d 700, 703 (8th Cir. 2021) (requested injunctive relief was moot when prison official expressly stated that prisoner would continue to receive hormone therapy).[4]

--------------------------------

[4]I join the majority's qualified immunity analysis in full.