### GREEN et al. v. UNITED STATES. *

(Circuit Court of Appeals, Eighth Circuit. March 29, 1923.)

No. 5997.

I. **Criminal law ⬳395—Searches and seizures ⬳3—Probable cause to believe defendants were committing crime held to justify arrest and search without warrant.**

Where defendants, who for some weeks had been under surveillance as suspected dealers in narcotic drugs, were seen carrying a grip and entering a drug store, which was notorious as a rendezvous for narcotic peddlers, and the proprietor of which was then under indictment, there was probable cause to believe that they were engaged in commission of a crime, which justified the arrest and search by government agents without a warrant, and narcotic drugs found in their possession were admissible in evidence against them.

2. **Criminal law ⬳364(4)—Evidence of attempted bribery held admissible as part of the res gestæ.**

Evidence that, very shortly after their arrest by government officers, who stated their official character, and while being taken to a police station, defendants offered a bribe to the officers for their release, *held* admissible on their trial as a part of the res gestæ.

In Error to the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied June 12, 1923.

Criminal prosecution by the United States against Isadore Green and Benjamin Lichtor. Judgment of conviction, and defendants bring error. Affirmed.

George A. Neal and Julius C. Shapiro, both of Kansas City, Mo., for plaintiffs in error.

Samuel M. Carmean, Asst. U. S. Atty., of Kansas City, Mo. (Charles C. Madison, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before LEWIS, Circuit Judge, and POLLOCK and SYMES, District Judges.

SYMES, District Judge. The defendants, plaintiffs in error here, Isadore Green and Benjamin Lichtor, were convicted on the second count of an indictment charging them with being dealers in and having in their possession on January 18, 1921, unlawfully, a quantity of morphine and cocaine without having registered as dealers and paying the special tax as required by what is known as the Harrison Anti-Narcotic Act (Comp. St. §§ 6287g–6287q). The defendants on this appeal have raised two points: First, that they were illegally arrested and their personal belongings searched without the authority of a search warrant, and the narcotics discovered as the result of the search wrongfully used as evidence against them; secondly, that the court erred in admitting evidence of an offer of money made by defendants to the officers at the time of their arrest to secure their release.

[1] The evidence discloses that for over a month prior to the arrest of the defendants they had been under surveillance by the narcotic agents, who had information that they had brought narcotics into Kansas City. The officers were also watching a certain drug store that was notorious as a rendezvous for drug peddlers, and during the time mentioned the defendant Lichtor was seen to drive up there in his car and engage in conversation with the proprietor, then under indictment for dealing in narcotics. Their investigation further disclosed that the car the defendant Lichtor was using was licensed in the name of the defendant Green. There is evidence that on the day of the arrest the two defendants drove up to the drug store, and one of them went in. Later they were observed at a barber shop run by Green, where Lichtor spent part of his time. From there they proceeded in the car licensed in the name of Green, and drove to the drug store. Green alighted, carrying a grip, followed by Lichtor. At this point the officers stepped up, disclosed their identity, and placed them under arrest, and, putting them back in the car, started with them for the police station. Immediately the defendants began to talk about "fixing the matter up," etc., so as not to be taken to jail, and exhibited and offered $250 to the officers, stating there would be more coming, if necessary. At the same time the officers inquired what was in the bag that was in possession of the defendants in the car, and they replied, "Nothing." The officers requested them to open it. They complied, and a quantity of morphine and cocaine was found therein, which was afterwards used as evidence at the trial.

Taking up the first point, and bearing in mind the language of the

Supreme Court in several late cases enjoining a broad construction of the Fourth Amendment of the Constitution, to the end that the immunities of the citizen therein specified shall not be weakened: It is settled that this amendment contains no prohibition against arrest, search, or seizure without a warrant, but only denounces unreasonable searches and seizures. The decisions of the federal courts, and many states, including Missouri, recognize the right of a constable or peace officer to arrest a criminal caught in the act of committing a crime without a warrant, and, further, to search him, and take and use as evidence against him any implements or evidence of the crime found in his possession. It has further been held that it is not an unreasonable search for an officer, charged with the enforcement of the law, to arrest on the public highway a person who, as in the case at bar, previous information gives him reasonable grounds to believe has committed and is committing a felony. Such was the common law at the time the Constitution was adopted, and the Fourth Amendment made no change therein.

Blackstone, in his Commentaries (book 4, p. 292), states the common-law doctrine as follows:

"2. Arrests by officers without warrant may be executed, first, by a justice of the peace, who may himself apprehend, or cause to be apprehended, by word only, any person committing a felony or breach of the peace in his presence; second, the sheriff, and third, the coroner, may apprehend any felon within the county without warrant; fourth, the constable, of whose office we formerly spoke hath great original and inherent authority with regard to arrests. He may, without warrant, arrest any one for a breach of the peace committed in his view, and carry him before a justice of the peace. And in case of felony actually committed, or a dangerous wounding, whereby felony is likely to ensue, he may upon probable suspicion arrest the felon, and for that purpose is authorized (as upon a justice's warrant) to break open doors, and even to kill the felon, if he cannot otherwise be taken; and if he or his assistants be killed in attempting such arrest, it is murder in all concerned."

Probable cause which will justify an arrest is reasonable grounds of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offense of which he is suspected. The evidence discloses that, in the case at bar, the narcotic officers had probable cause to warrant the arrest of the defendants, and, having made a legal arrest, they had the right to search and take from them narcotics, the mere possession of which, under the circumstances existing, constituted a felony.

"Every search and seizure made by an officer without a search warrant is not within the condemnation of the Fourth Amendment. It is the right and duty of the government to secure evidence of crime, even from the accused himself, if this can be done without violating his constitutional rights." Gouled v. U. S., 255 U. S. 298, at page 301 (41 Sup. Ct. 261, 65 L. Ed. 647).

The right of the government to search the person of the accused for evidence of a crime, and discover and seize the fruits or evidence of the crime, has always been maintained under English and American law. Weeks v. U. S., 232 U. S. 383, at page 392 (34 Sup. Ct. 341,

·58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177). Judge Hook said in Pritchett v. Sullivan (8 C. C. A.) 182 Fed. 480, 104 C. C. A. 624, that public officers, especially charged with the enforcement of the law and preservation of the peace, may lawfully arrest without warrant and without view of the crime where they have reasonable grounds for believing that a felony has been committed.

"It is not only the right, but the duty, of an officer making an arrest to take from the prisoner, not only stolen goods, but any article which may be of use as proof in the trial of the offense with which the prisoner is charged." From dissenting opinion in Newberry v. Carpenter, 107 Mich. 567, 65 N. W. 530, 31 L. R. A. 163, 61 Am. St. Rep. 346.

"The rule of the common law, that a peace officer or a private citizen may arrest a felon without a warrant, has been generally held by the courts of the several states to be in force in cases of felony punishable by the civil tribunals." Kurtz v. Moffitt, 115 U. S. 487, at 504, 6 Sup. Ct. 148, at page 154 (29 L. Ed. 458).

See, also, late case Epstein v. U. S. (C. C. A.) 284 Fed. 567.

[2] Adverting to the second point: The record shows that the lower court admitted evidence of the conversation between the government officers and the defendants in regard to the alleged attempt of bribery, on the ground that it constituted a part of the res gestæ, and that the attitude of the defendants at the time, upon being informed that they were government officers, would therefore be a deduction as bearing upon intent and good faith. The evidence of the arrest of the accused, the attending circumstances, the persons in his company, the acts and conduct of the accused, his declarations, etc., are all proper as part of the res gestæ, when, as here, the statements in question were made while the minds of the defendants were still acting under the excitement and influence of the immediate circumstances of the arrest. 16 Corpus Juris, 553.

The judgment of the lower court is affirmed.