# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-3027

———————————————

Central Specialties, Inc.

*Plaintiff - Appellant*

v.

Jonathan Large; Mahnomen County

*Defendants - Appellees*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: May 11, 2021
Filed: November 24, 2021

——————————

Before SMITH, Chief Judge, SHEPHERD and GRASZ, Circuit Judges.

——————————

SHEPHERD, Circuit Judge.

Central Specialties, Inc. (CSI), which won a contract to perform road work on state highways across three Minnesota counties, filed this action against Mahnomen County and its Engineer, Jonathan Large, after Large stopped two of CSI's trucks for exceeding the posted weight limit on the road on which they were traveling. CSI asserted claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments and claims under state law for trespass to chattel and tortious

interference with contract. The district court[1] granted summary judgment in favor of defendants, and CSI appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In late 2016, CSI, a road and highway construction company, was awarded a contract by the Minnesota Department of Transportation (MnDOT) to perform road work on State Highway 59, which crosses three Minnesota counties: Becker, Polk, and Mahnomen. As part of its contract, CSI proposed certain existing county roads be designated haul roads, which CSI would use to haul material away from the project site. Although CSI was responsible for proposing haul roads, MnDOT retained the ultimate authority to determine which roads would be designated as haul roads. When a haul road is designated, it comes under the jurisdiction of MnDOT and is no longer under the purview of the county in which the road is located. However, counties retain an interest in the selection of haul roads because counties are responsible for the maintenance and upkeep of all county roads, and the specific uses of a given road can impact the road's condition. When the haul road is released back to a county, MnDOT reimburses the county for the use, but additional expenses related to any deterioration of the road from its use as a haul road are difficult to ascertain, often leaving the county with the responsibility to pay for repairs.

In April 2017, at a preconstruction meeting, CSI proposed the roads it wished to be designated as haul roads. CSI proposed that it use County State Aid Highways (CSAH) 5, 6, and 10, each with an 80,000-pound limit. Large, who as the County Engineer for Mahnomen County was responsible for the maintenance and upkeep of all county roads, objected to the designation of the specific CSAH as haul roads because they were already in generally poor condition and he did not believe they could sustain CSI's proposed loads over the course of the construction project.

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

-2-

Large further objected to the designation of CSAH 5 and 10 as haul roads because they were scheduled to undergo extensive repairs later in 2017. MnDOT conducted testing of the roads based on Large's stated concerns and confirmed Large's belief that the roads were in generally poor condition, which could be exacerbated by use as haul roads. In an email with a county engineer from another county, Large expressed the necessity of an agreement between Mahnomen County and MnDOT for payment of damages sustained to haul roads during their period of designation because, without an agreement, he believed that MnDOT would not be able to hold CSI accountable for damages sustained to the haul roads and that Mahnomen County would ultimately be left financially responsible for any repair costs. In May 2017, MnDOT notified CSI that it would designate as haul roads portions of CSAH 5 and 10 with a nine-ton weight restriction and CSAH 6 with a seven-ton weight restriction. MnDOT did not designate all of the roads CSI proposed to be used as haul roads.

After construction began, CSI notified both Large and MnDOT that it intended to use portions of CSAH 6 and 10 that were not designated as haul roads as a return route for its empty trucks and that it would continue using the designated portions of CSAH 5 and 10. Large responded by reiterating to CSI that it needed to use designated haul roads for all truck trips, regardless of whether trucks were loaded or unloaded, noting that CSI did not have an agreement with Mahnomen County to use a non-designated route. Large also referenced ongoing construction on CSAH 10. CSI then emailed the MnDOT Project Manager, asking him to designate the roads as to their legal limits or to direct CSI to not use the road. On July 17, 2017, the MnDOT Project Manager responded that MnDOT had already designated haul roads for the project and that if CSI chose to use alternate routes, the matter was solely between CSI and the local road authority. Despite this directive, CSI stated that it intended to use the roads without any agreement with Large or Mahnomen County.

On the morning of July 18, 2017, the Mahnomen County Board of Commissioners approved a weight restriction to CSAH 10, lowering it from a

-3-

five-ton axle weight to a five-ton total weight limit. County officials posted signs with the new weight restrictions before noon that day, and Large spoke with the MnDOT Project Manager just before 1:00 p.m. to inform him of the change. Large asked the Project Manager to inform CSI of the weight restriction change, which he did via an email sent at 1:19 p.m. Shortly after 2:00 p.m., Large observed two CSI trucks driving on CSAH 10 in a work zone. Large was unable to ascertain whether the trucks were loaded or unloaded but concluded that even an empty truck would be in violation of the new, reduced weight restriction. Large, driving in a marked Mahnomen County truck, used his vehicle to block the road and motioned to the drivers to pull over. The drivers complied with Large's request to pull over, after which Large called the local sheriff's office, which told him that it did not have the capacity to handle the situation. Large then called the White Earth Tribal Police, who responded to the scene but determined that they did not have authority to cite the drivers. Finally, state troopers arrived and weighed the vehicles. The troopers cited the driver of the first CSI truck for exceeding the posted weight limit. This driver later testified that she pulled over when she came upon Large's vehicle blocking the road. She stated that Large told her that she could not haul on the road, pointed to a sign showing the new weight restriction, and stated that she needed to wait until law enforcement arrived. The driver asserted that she and the second truck driver stayed at the location from 2:11 p.m. until 5:30 p.m. Large testified that he was at the scene for roughly one and a half to two hours before leaving and that law enforcement also permitted the trucks to leave. The driver of the second CSI truck testified that, while he and the other truck were stopped, he observed individuals changing the weight restriction signs along CSAH 10. He also observed other large trucks driving on the highway without being stopped by Large.

CSI then filed this action against Large and Mahnomen County, bringing claims under 42 U.S.C. § 1983 for violation of the Fourth and Fourteenth Amendments. Specifically, CSI alleged that Large violated the Fourth Amendment by exceeding the scope of his authority and detaining the CSI trucks for roughly three hours and asserted that the County was liable as Large's employer. CSI also alleged that Large violated the Fourteenth Amendment by depriving CSI of equal

-4-

protection and due process when he selectively changed and then selectively enforced the weight limits against CSI and by failing to give appropriate notice of the change in the weight restrictions, again asserting that the County was liable as Large's employer. CSI also brought state law claims of tortious interference with contract and trespass to chattel, asserting that defendants interfered with CSI's performance of its contract with MnDOT by changing the weight restrictions and enforcing them and that Large's detention of the trucks was so significant as to amount to a trespass.

Large and the County moved for summary judgment on all claims, which the district court granted. As to CSI's Fourth Amendment claim, the district court determined that the defendants were entitled to qualified immunity because even assuming that Large had seized the vehicles, the duration of the seizure was reasonable and Large, with his responsibilities as County Engineer, had sufficient reason to investigate the trucks after witnessing what he believed to be the trucks in violation of the posted weight limits. In addition to the absence of a constitutional violation, the district court also determined that it was not clearly established that only a law enforcement officer could request commercial activity to come to a brief halt to ensure compliance with local laws. As to the Fourteenth Amendment claims, the district court determined that defendants were entitled to qualified immunity on both CSI's equal protection and due process claims. With respect to the due process claim, the district court concluded that CSI failed to show a constitutional violation because CSI's assertion that it had no notice of the change in weight restrictions was unsupported, and regardless, CSI presented no authority recognizing a right to pre-deprivation notice in the context of the lowering of the highway weight limit. The district court also determined that it was not clearly established that a county could not change the weight restrictions on a road based on specific indications that its roads would be used for increased loads or traffic. With respect to the equal protection claim, the district court determined that CSI failed to demonstrate a constitutional violation because Large had a rational basis to stop the trucks given the road's condition, the road's lack of designation as a haul road, and CSI's stated intention to use the road for hauling purposes. The district court also determined

that it was not clearly established that every road restriction violation must be enforced and similarly concluded that CSI had presented no evidence of other companies that had been treated differently than CSI.

Finally, the district court also granted summary judgment on CSI's state law claims. As to the tortious interference with contract claim, the district court concluded that Large had justification to change the weight limits and stop CSI's trucks. As to the trespass to chattel claim, the district court concluded that the duration the trucks were stopped was not substantial and that Large did not exercise the requisite degree of dominion and control over the trucks to sustain a trespass to chattel claim. CSI appeals.

## II.

CSI asserts that the district court erred in granting summary judgment to defendants on each of its constitutional claims, asserting that the district court engaged in impermissible fact finding and ignored record evidence demonstrating that Large intentionally violated CSI's rights. "We review de novo the district court's grant of summary judgment, 'viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party.'" Odom v. Kaizer, 864 F.3d 920, 921 (8th Cir. 2017) (citation omitted). "Summary judgment is proper when there is no genuine dispute of material fact and the prevailing party is entitled to judgment as a matter of law." Scudder v. Dolgencorp, LLC, 900 F.3d 1000, 1004 (8th Cir. 2018) (citation omitted).

## A.

"Qualified immunity shields officials from civil liability in § 1983 actions when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Morgan v. Robinson, 920 F.3d 521, 523 (8th Cir. 2019) (en banc) (citation omitted). While qualified immunity is most typically seen in the context of law enforcement, it also applies to other

government officials like Large. See, e.g., Thurmond v. Andrews, 972 F.3d 1007, 1010-13 (8th Cir. 2020) (concluding county jail employees were entitled to qualified immunity on § 1983 claim alleging Eighth Amendment violation); Doe v. Flaherty, 623 F.3d 577, 580, 586 (8th Cir. 2010) (concluding school principal was entitled to qualified immunity on § 1983 claims stemming from sexual abuse of student by basketball coach). In considering a claim of qualified immunity, we apply the familiar two-prong framework, first considering "whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right," and second, "whether the right was clearly established at the time of the alleged infraction." Kulkay v. Roy, 847 F.3d 637, 642 (8th Cir. 2017) (citation omitted). "Courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'" Id. (citation omitted).

CSI asserted claims under the Fourth and Fourteenth Amendments. Under the Fourth Amendment, CSI alleges Large unlawfully seized CSI's trucks. See United States v. Jacobsen, 466 U.S. 109, 113 (1984). Under the Fourteenth Amendment, CSI asserts that defendants deprived CSI of its due process rights when they changed the weight limits without sufficient notice, see Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985), and that Large violated CSI's equal protection rights by treating it as a "class of one" when he enforced the new weight restrictions against only CSI, see Barstad v. Murray Cnty., 420 F.3d 880, 884 (8th Cir. 2005) (citation omitted).

Although CSI asserts that the district court made factual findings to determine that no constitutional violations occurred, we need not address that argument because our inquiry begins and ends with the clearly established prong. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Morgan, 920 F.3d at 523. In determining whether a right is clearly established, the Supreme Court has "repeatedly" cautioned courts "'not to define clearly established law at a high level of generality.' The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.' This inquiry 'must be undertaken in light of the

-7-

specific context of the case, not as a broad general proposition.'" Mullenix v. Luna, 577 U.S. 7, 12 (2015) (per curiam). "There need not be a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.' . . . [Q]ualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.'" Morgan, 920 F.3d at 524 (citation omitted).

CSI simply presents no case that comes close to demonstrating that the rights it alleges were violated were clearly established. Under the unique circumstances of this case, we cannot say that it was clearly established that Large, a county engineer tasked with oversight of all county roads, could not prevent trucks that he had reason to believe were operating above the posted weight limit from passing over and damaging the roadway or could not call law enforcement to investigate compliance with the new, reduced weight restrictions.

The dissent argues that by finding that any alleged constitutional violation was not clearly established, we have, in effect, sanctioned the deputization of county engineers to perform traffic stops. The record does not bear this out. Although Large impeded the CSI trucks' progress on the highway, Large did not conduct a traffic stop or detain the drivers. See United States v. Dortch, 868 F.3d 674, 677 (8th Cir. 2017) ("[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (alteration in original) (citation omitted)). Large motioned for the CSI drivers to pull over and called law enforcement for assistance, but there is no evidence in the record that the CSI drivers were not free to simply turn around and drive away before law enforcement arrived. Indeed, in his deposition testimony, Large acknowledged that he did not have the authority to perform a traffic stop, stating instead that his authority as County Engineer allowed him to close or control traffic on the highway in question. See id. ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a

-8-

'seizure' has occurred." (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). Moreover, the record demonstrates that any detention or seizure occurred at the hands of law enforcement; it was law enforcement who cited one of the CSI drivers and who kept the same drivers on the side of the road until the ultimate conclusion of their investigation, a fact further evidenced by Large's departure from the scene before law enforcement concluded their investigation and released the drivers. The record reflects that Large, as County Engineer with responsibility for oversight of county roads, merely prevented the CSI trucks from traveling on a county highway before the drivers complied with his request to wait for the arrival of law enforcement. The record does not support the dissent's notion that Large's conduct amounted to an unlawful traffic stop.

Nor was it clearly established that the defendants could not change the weight restrictions in response to CSI's stated intention to use the CSAHs despite the lack of designation as a haul road or that Large could not seek law enforcement's assistance in investigating CSI's trucks' weights after the weight limit change and CSI's stated intention to use the roads despite the reduction in weight limit. To find that a right is clearly established, we must find "controlling Eighth Circuit authority placing the question beyond debate, []or a 'robust consensus of cases of persuasive authority.'" De La Rosa v. White, 852 F.3d 740, 746 (8th Cir. 2017) (citation omitted). Far short of this standard, we find *no* cases considering this issue, or even cases considering remotely similar facts. We thus find that there was no clearly established right, and we therefore conclude that the district court properly granted summary judgment to Large on the basis of qualified immunity.

Although the district court also granted summary judgment to the County, it did so on the basis of qualified immunity, to which the County is not entitled. See Thurmond, 972 F.3d at 1013 ("Unlike the individual officers . . . , municipalities do not enjoy qualified immunity."). However, CSI's constitutional claims against the County fail for an independent reason, and we may affirm on any basis in the record. Interstate Bakeries Corp. v. OneBeacon Ins. Co., 686 F.3d 539, 542 (8th Cir. 2012) ("We may affirm the judgment of the district court 'on any basis disclosed in the

record, whether or not the district court agreed with or even addressed that ground.'" (citation omitted)). In its amended complaint, CSI's constitutional claims against the County are premised solely upon the County's status as Large's employer. But a county cannot be held liable *solely* based on a theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) ("[T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."). As CSI's claim did not allege any policy or custom of the county related to Large's conduct, this claim fails as a matter of law. We thus affirm the grant of summary judgment to the County on CSI's constitutional claims.

B.

CSI finally argues that the district court erred in granting summary judgment to defendants on its state law claims, asserting that the district court erroneously concluded that CSI did not present sufficient evidence to sustain a trespass to chattel claim and engaged in inappropriate fact-finding regarding the tortious interference with contract claim, an error which it compounded by resolving the factual disputes in favor of defendants. We are unpersuaded by each of CSI's contentions.

As to the tortious interference with contract claim, under Minnesota law, "[a] cause of action for wrongful interference with a contractual relationship requires: '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages.'" Kjesbo v. Ricks, 517 N.W.2d 585, 588 (Minn. 1994) (en banc) (citation omitted). Tortious interference is a claim that is broader than a typical breach of contract claim, "in that the former includes 'any act injuring or destroying persons or property which retards, makes more difficult, or prevents performance,

-10-

or makes performance of a contract of less value to the promisee.'" Cont'l Rsch., Inc. v. Cruttenden, Podesta & Miller, 222 F. Supp. 190, 198 (D. Minn. 1963) (quoting Royal Realty Co. v. Levin, 69 N.W.2d 667, 671 (Minn. 1955)). Thus, an explicit breach of contract is not required. Id. CSI asserts that it presented sufficient evidence to defeat summary judgment by demonstrating that defendants maliciously changed the weight limit and stopped CSI's trucks to interfere with CSI's performance of its contract with MnDOT. "A defendant may avoid liability, however, by showing that his actions were justified by a lawful object that he had a right to pursue." Langeland v. Farmers State Bank of Trimont, 319 N.W.2d 26, 32 (Minn. 1982) (en banc). "Ordinarily, whether interference is justified is an issue of fact, and the test is what is reasonable conduct under the circumstances. The burden of proving justification is on the defendants." Kjesbo, 517 N.W.2d at 588 (citation omitted).

CSI argues that justification "is a question of fact, which must go to a jury." Appellant Br. 37. However, while the Minnesota Supreme Court stated that justification as a defense to interference with a contract is "ordinarily" a question of fact, it left open the possibility that, as here, cases may arise in which a court may determine that, as a matter of law, a defendant had justification for its alleged interference. Even when viewing the facts in the light most favorable to CSI, we agree with the district court that the record demonstrates that, as a matter of law, defendants had justification for their actions—the County and Large modified the weight restrictions on the roads due to Large's longstanding concern about the use of the roads as haul roads given their condition, which was confirmed by subsequent testing, and Large's concern that if CSI used a haul road without designation, the County would be left financially responsible for any damages to the roads. See Kjesbo, 517 N.W.2d at 588 ("There is no wrongful interference with a contract where one asserts 'in good faith a legally protected interest of his own . . . believe[ing] that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.'" (alterations in original) (citation omitted)). The record simply does not support a finding that Large and the County were unjustified in changing the weight restrictions.

Further, Large's responsibilities as County Engineer included oversight of all county roads, which provided him with "a lawful object that he had a right to pursue" in the form of ensuring compliance with the new weight restrictions. See Langeland, 319 N.W.2d at 32. Although the record does support the inference that defendants were motivated by CSI's statement that it intended to utilize non-designated roads, defendants' protection of the interests of Mahnomen County does not undercut the justification for their actions, regardless of the consequences CSI complained it suffered in the form of project delays and related costs. See Spice Corp v. Foresight Mktg. Partners, Inc., Civil No. 07-4767 (JNE/JJG), 2011 WL 6740333, at *19 (D. Minn. Dec. 22, 2011) ("Every business decision is likely to have downstream consequences. . . . Mere knowledge that a decision might affect other parties' contracts is not the same as intentional, unjustified interference."). Because defendants were justified, as a matter of law, in changing the weight restrictions and stopping CSI's trucks, the district court properly granted summary judgment to defendants on CSI's tortious interference claim.

As to the trespass to chattel claim, under Minnesota law, "[a] trespass to chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." Olson v. LaBrie, No. A12-1388, 2013 WL 1788531, at *3 (Minn. Ct. App. Apr. 29, 2013) (quoting Restatement (Second) of Torts § 217).[2] "'Trespass to chattel differs from

_____

[2]This opinion was designated as unpublished by the Minnesota Court of Appeals and may be used as precedent only in certain enumerated circumstances, pursuant to Minn. Stat. § 480A.08 subdiv. 3. However, when interpreting state law, "[if] the highest state court has not decided an issue we must attempt to predict how the highest court would resolve the issue, with decisions of intermediate state courts being persuasive authority." Progressive N. Ins. Co. v. McDonough, 608 F.3d 388, 390 (8th Cir. 2010). The Minnesota Supreme Court has recognized the tort of trespass to chattel as stated in the Restatement (Second) of Torts, see Herrmann v. Fossum, 270 N.W.2d 18, 20-21 (Minn. 1978), but we find no other authority from the Minnesota Supreme Court delineating the contours of a trespass to chattel claim. We rely on Olson as persuasive authority as to how the Minnesota Supreme Court would address a trespass to chattel claim; however, we note that Olson largely

conversion "only in degree'" and 'typically involves less than a complete divestment of the plaintiff's possessory rights in his property.'" Strei v. Blaine, 996 F. Supp. 2d 763, 792 (D. Minn. 2014) (citation omitted).

> Dispossessing includes taking the chattel from the person in possession without his consent, obtaining possession of the chattel by fraud or duress, "barring the possessor's access to the chattel," or destroying the chattel while it is in another's possession. [Restatement (Second) of Torts] § 221 (1965). "Intermeddling" means intentionally coming into physical contact with the chattel. Id. § 217 cmt. e (1965). Liability arises if the defendant dispossesses the possessor of the chattel, impairs its condition, quality, or value, or deprives the possessor of the chattel's use for a substantial period of time. Id. § 218 (1965)[.]

Olson, 2013 WL 1788531, at *3.

CSI asserts that it has offered sufficient evidence to defeat summary judgment, arguing that Large exercised control over the CSI trucks when he used his truck to physically block them from continuing and detained them for roughly three hours. But Minnesota law demands something more than the evidence CSI has presented; Large's impeding the path of the trucks is not a sufficient exercise of control to sustain a trespass to chattel claim. Large did not dispossess the drivers of the trucks, nor did he bar the drivers of CSI's trucks from access to their trucks or make physical contact with either truck. Large merely impeded their forward progress, and there is nothing in the record suggesting that Large forcibly detained the drivers. Although Large told the drivers to wait until law enforcement arrived, the record does not suggest that he used any force that would amount to trespass to achieve this aim, nor does the record reflect that the three-hour delay was caused by Large. Because Large did not exercise the requisite dominion and control over CSI's trucks, the district court properly granted summary judgment in favor of defendants on the trespass to chattel claim.

---

recounts the standards set forth in the Restatement, which the Minnesota Supreme Court has adopted.

III.

For the foregoing reasons, we affirm the judgment of the district court.

GRASZ, Circuit Judge, concurring in part and dissenting in part.

There's a new sheriff in town.

Today, the court holds that a local official in charge of road design and maintenance is entitled to summary judgment on a claim against him for exercising the authority of a law enforcement officer and making traffic stops and seizing vehicles and their drivers.[3] The holding implicitly cloaks such officials with near-absolute immunity for their actions since there are no existing cases circumscribing or defining the scope of this newly discovered, unwritten law enforcement authority. Because this holding runs counter to precedent dictating qualified immunity is not available in this context,[4] I respectfully dissent from those portions of the court's

---

[3]The court claims Large did not make a traffic stop or detain the drivers, and opines "there is no evidence in the record that the CSI drivers were not free to simply turn around and drive away before law enforcement arrived." *Ante*, at 8. Putting aside the practical question of whether a truck that big could just "turn around" on a county road, the court's characterization of the encounter is impermissible at the summary judgment stage. We are supposed to resolve all facts in favor of the non-moving party. The driver of the first truck stopped by Large asserted that "Large used his vehicle as a roadblock to block CSI's truck for [sic] continuing." Decl. of Peggy Strommen, ¶ 1, ECF No. 74. After the driver stopped the truck, Large called law enforcement and told the driver she "had to wait until law enforcement arrived." *Id.* at ¶ 2. She claimed she was "detained from 2:11 until 5:30 p.m." *Id.* Viewing the facts in the light most favorable to CSI, this was in fact a stop and detention.

[4]The district court also wrongly determined Mahnomen County was entitled to qualified immunity. Qualified immunity is simply not available to a county. *See Walden v. Carmack*, 156 F.3d 861, 868 (8th Cir. 1998) (holding a county's argument that it was entitled to qualified immunity was "without merit because a municipality may not assert qualified immunity as a defense"). However, I concur with the panel in its alternative ground for affirming judgment in favor of the County as to CSI's constitutional claim.

opinion granting qualified immunity to County Engineer Jonathan Large as to CSI's Fourth Amendment unlawful seizure claim and Fourteenth Amendment equal protection claim.

I.

The court's analysis of CSI's Fourth Amendment unlawful seizure and Fourteenth Amendment equal protection claims against Large "begins and ends" with its qualified immunity analysis. *Ante*, at 7. But qualified immunity is not applicable here.

We have "held that an official acting outside the clearly established 'scope of his discretionary authority is not entitled to claim qualified immunity under § 1983.'" *Johnson v. Phillips*, 664 F.3d 232, 236 (8th Cir. 2011) (quoting *Hawkins v. Holloway*, 316 F.3d 777, 788 (8th Cir. 2003)). In doing so we "adopted the rationale [of the Fourth Circuit] in *In re Allen*, 106 F.3d 582 (4th Cir. 1997)." *Id.*

The question, then, is what authority Large had as a county engineer. But first, it is important to identify what this inquiry entails and what it does not.

"In determining the scope of an official's authority, and whether the act complained of was clearly established to be beyond that authority, the issue is neither whether the official properly exercised his discretionary duties, nor whether he violated the law." *Allen*, 106 F.3d at 594. "Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Id.*

And whether Large's seizure of CSI's trucks was "clearly established" as beyond his authority is not a function of finding similar cases involving road engineers making traffic stops. Rather, it entails reviewing the statutes governing county engineers in Minnesota. *See Johnson*, 664 F.3d at 239 (analyzing a city ordinance to determine whether an Auxiliary Reserve Police Officer had the power

-15-

to arrest or search incident to arrest and holding that because he did not, he was not entitled to qualified immunity); *Allen*, 106 F.3d at 595 (relying on the Supreme Court cases of *Doe v. McMillan*, 412 U.S. 306, 321–24 (1973), and *Barr v. Matteo*, 360 U.S. 564, 574–75 (1959) (plurality opinion), for the proposition that "the scope of an official's authority depends upon an analysis of the statutes or regulations controlling the official's duties").

## II.

So, the task before us is to look to Minnesota law to see whether making traffic stops, enforcing traffic laws, or seizing and detaining vehicles and drivers to investigate potential weight limit violations is within Large's discretionary authority. It is not.

To begin with, there is no statute giving a county engineer authority to stop and detain individuals. The governing statute provides, "The county board of each county shall appoint and employ . . . a county highway engineer who may have charge of *the highway work* of the county and the forces employed thereon, and who shall make and prepare all surveys, estimates, plans, and specifications which are required of the engineer." Minn. Stat. § 163.07, subdiv. 1 (emphasis added). And a separate statute, Minn. Stat. § 163.02, subdiv. 3 provides, "The county board, or the county engineer if so authorized by the board, may impose weight and load restrictions on any highway under its jurisdiction."

Nowhere is there the slightest hint in Minnesota law that a county engineer is a peace officer, a constable, or someone "charged with the enforcement of the law, *Green v. United States*, 289 F. 236, 238 (8th Cir. 1923),[5] so as to have authority to

---

[5]In *Green*, we explained that under the common law, four types of officials could conduct warrantless arrests in certain circumstances: a justice of the peace, a sheriff, a coroner, or a constable. 289 F. at 238 (citing 4 William Blackstone, *Commentaries*, *292).

make arrests or seizures of persons on public highways. In *Allen*, the court noted that West Virginia law "narrowly circumscribes the powers of the Attorney General" of that state, and "that the Attorney General does not enjoy broad common law powers." 106 F.3d at 595–96. So too does Minnesota law narrowly circumscribe the powers of county engineers. Indeed, Minnesota courts do not liberally construe an official's authority to make investigatory stops. In *State v. Horner*, 617 N.W.2d 789, 793–94 (Minn. 2000), the Minnesota Supreme Court held that even "special deputies" (in that case, water patrol officers authorized "to enforce water safety laws") were not peace officers.[6] *Id.* at 793 (explaining "state law does not explicitly recognize a special deputy as a form of peace officer"). The court stated, "[W]e hesitate to liberally construe the definition of peace officer. . . . [I]t is a misdemeanor for anyone not a peace officer to perform an act reserved by law for licensed peace officers." *Id.* at 794. The court further held that, as private citizens, the deputies had no authority to make an investigatory stop. *Id*. at 795. As a result, the court affirmed the suppression of evidence the special deputies had gathered. *Id.* at 796.

If a water patrol officer authorized to enforce water safety laws does not have authority to make an investigatory stop under Minnesota law, then surely a county engineer does not. The Minnesota Supreme Court has described the duties of a county engineer: "The statute provides that he should have charge of the highway work of the county and the forces employed thereon[.]" *State ex rel. Sprague v. Heise*, 67 N.W.2d 907, 911 (Minn. 1954) (quoting *State ex rel. Michie v. Walleen*, 241 N.W. 318, 318 (Minn. 1932)). "He is the highest authority in the county as to his official duties; all road work in the county must be done under his supervision; the success of his department depends on his engineering technique." *Id.* (quoting same).

_____

[6]Under Minnesota transportation law, "'[p]olice officer' means every officer authorized to direct or regulate traffic or to make arrests for violations of traffic rules." Minn. Stat. § 169.011, subdiv. 56. And a "peace officer" is an official "licensed by the board" and "charged with the prevention and detection of crime and the enforcement of the general criminal laws of the state[.]" *Pena v. Kindler*, 863 F.3d 994, 998–99 n.4 (8th Cir. 2017) (quoting Minn. Stat. § 626.84, subdiv. 1(c)(1)).

Notably absent from the court's description of the duties are any that relate to those of a peace officer. As a county engineer, Large is not charged with detecting crime and enforcing the general criminal laws of the state of Minnesota. And even as a private citizen, he had no authority to make an investigative stop. *See Horner*, 617 N.W.2d at 795.

Put simply, Large is not a law enforcement officer. When he stopped and detained CSI's trucks and drivers, he possessed no warrant and had no authority to determine whether probable cause existed to seize CSI's trucks. Indeed, he had no authority to make traffic stops, enforce traffic laws, seize vehicles that may be in violation of weight limits, or detain drivers or vehicles to investigate violations of the law. Consequently, the doctrine of qualified immunity has no application to a county engineer in this situation, and Large cannot avail himself of its protections.

I cannot square the court's contrary conclusion with our decision in *Johnson*, or the Minnesota Supreme Court's decision in *Horner*. Accordingly, I respectfully dissent from the court's opinion as to the Fourth Amendment unlawful seizure claim.[7]

_____

[7]I also dissent from the court's opinion on the equal protection claim. It is true that a class-of-one equal protection claim generally cannot, without malicious conduct, be used to attack an officer's investigative decisions. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602–04 (2008); *Robbins v. Becker*, 794 F.3d 988, 995 (8th Cir. 2015). This is because such claims are deemed to be incompatible with the discretion held by law enforcement officers. *See id.*; *Novotny v. Tripp County*, 664 F.3d 1173, 1179 (8th Cir. 2011). But this principle has no application where, as here, the defendant is not a law enforcement officer. As discussed in the context of the Fourth Amendment unlawful seizure claim, Large had no law enforcement investigative authority and, therefore, no investigative discretion. Consequently, the class-of-one exception does not apply to this case. Large thus is not entitled to qualified immunity on CSI's Fourteenth Amendment equal protection claim.