# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3121

_____

Select Specialty Hospital - Sioux Falls, Inc., a Missouri business corporation

*Plaintiff - Appellant*

v.

Brentwood Hutterian, Brethren, Inc., a South Dakota non-profit corporation; South
Dakota Medical Holding Company, Inc., a South Dakota corporation doing
business as Dakotacare; Hutterian Brethren General Medical Fund, a South Dakota
non-profit corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of South Dakota - Southern

_____

Submitted: March 21, 2023
Filed: August 30, 2023

_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

After suffering a stroke, Mary, a member of the Brentwood Hutterite
Brethren, received care at a Select Specialty Hospital. During her time at Select, she
was covered by Brentwood's insurance. But after Mary applied for and received
Medicaid, it retroactively covered her time at Select. Select accepted $300,000 from

Medicaid for Mary's care—far less than it was expecting from Mary's Brentwood insurance. Select now seeks payment from Brentwood, the Hutterite Brethren General Fund (the Fund), and South Dakota Medical Holdings Company (Dakotacare) for breach of contract. It also seeks damages from Brentwood and the Fund for fraud and deceit. The district court[1] granted summary judgment to Brentwood, the Fund, and Dakotacare. We affirm.

I.

Select, a long-term care facility, provided $1.9 million of care to Mary between March and December 2018. As a Brentwood member, Mary was insured under Brentwood's insurance plan (the Plan), which covers all members until "the Participant leaves the Colony, turns age 65, or becomes deceased." The Plan was sponsored by the Fund—a consortium of Hutterite Colonies that provides medical coverage for members—and administered by Dakotacare. Before Select cared for Mary, it received preauthorization from Dakotacare.

As part of her care, Mary needed to be transferred to a ventilator facility, but the ventilator facility closest to her family required Medicaid. A director of the Fund, Jared Wollman, applied for disability benefits on Mary's behalf, which would make her automatically eligible for Medicaid. Mary's application for disability benefits stated that she did not have "any private, group or government health insurance that pays the cost of her medical care." But Mary *did* have insurance coverage under the Plan.

On May 1, 2018, Mary qualified for disability benefits and automatically became Medicaid-eligible. Wollman then realized that Mary also qualified for retroactive coverage, meaning that Medicaid—not the Plan—could cover Mary's care even before May 1. Wollman was notified in late November that Mary was

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

approved for retroactive Medicaid coverage for her entire time at Select. After receiving this approval, Wollman sent Mary's Plan termination forms to Dakotacare.

Select suspected that Mary's coverage could not have been terminated and initially instructed its staff to wait on seeking Medicaid payment for Mary. But then Select decided to move forward with Medicaid "in the event [it was] not successful" getting reimbursed by Dakotacare. In May 2019, Medicaid approved the payment, and Select accepted about $300,000 from Medicaid.

## II.

Select argues that Brentwood and the Fund breached their contractual obligations by refusing to pay for Mary's treatment. But Select has already accepted money from Medicaid "as payment in full" for Mary's care. 42 C.F.R. § 447.15. The district court found that this barred Select from recovering and granted summary judgment to Brentwood and the Fund. We review *de novo*. *Cent. Specialties, Inc. v. Large*, 18 F.4th 989, 996 (8th Cir. 2021).

Under 42 C.F.R. § 447.15, "the Medicaid agency must limit participation in the Medicaid program to providers who accept, *as payment in full*, the amounts paid by the agency." (emphasis added). As a Medicaid program participant, Select must follow this regulation. The central issue here is whether § 447.15's "payment in full" provision bars Select from pursuing third parties like Brentwood and the Fund after accepting payment from Medicaid.

This is an issue of first impression for the Court. We first consider the plain language of § 447.15, asking "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 823 (8th Cir. 2009) (citation omitted). "If the statute is unambiguous, we simply apply the statute." *Andrade-Zamora v. Lynch*, 814 F.3d 945, 951 (8th Cir. 2016).

In our view, § 447.15's "payment in full" language is plain and unambiguous: Once Select accepted payment from Medicaid, it was paid in full for Mary's care.[2] *See Miller v. Wladyslaw Est.*, 547 F.3d 273, 284 (5th Cir. 2008) (explaining that the bar in § 447.15 is triggered when "a provider bills and accepts payments from Medicaid"). Select could either try to collect directly from Mary or a third party, or it could instead accept a reduced payment from Medicaid. It chose the latter. We hold that § 447.15's "payment in full" provision does not allow Select to pursue third parties for payment after accepting funds from Medicaid as payment in full.

This holding aligns with our precedent. We have previously suggested that accepting payment from Medicaid bars further recovery. *Robinett v. Shelby Cnty. Healthcare Corp.*, 895 F.3d 582, 587 (8th Cir. 2018) ("Unless and until a medical services provider chooses to charge and to accept payment from Medicaid, the provider is free to attempt to recover from . . . a liable third party."). And other courts' interpretations of § 447.15 support this. *See, e.g.*, *Lizer v. Eagle Air Med Corp.*, 308 F. Supp. 2d 1006, 1009 (D. Ariz. 2004); *Gist v. Atlas Staffing, Inc.*, 910 N.W.2d 24, 31–32 (Minn. 2018); *Nickel v. W.C.A.B. (Agway Agronomy)*, 959 A.2d 498, 506 (Pa. Commw. Ct. 2008). *But see Montefiore Med. Ctr. v. Empire Healthchoice HMO, Inc.*, 140 N.Y.S.3d 517, 518 (N.Y. App. Div. 2021) (concluding that § 447.15 did not bar recovery because of the contractual relationship between the parties).

Select argues that today's holding violates the principle that Medicaid is the "payor of last resort." Not so. If "reasonable measures" reveal that Brentwood and the Fund are liable for Mary's care and that the recoverable amount "reasonably expect[ed]" exceeds the cost of recovery, Medicaid must pursue them for payment.

---

[2]Select argues that we should read § 447.15 in conjunction with other non-recourse provisions: 42 U.S.C. § 1396(a)(25)(C), 42 C.F.R. § 447.20, and S.D. Admin. R. 67:16:01:07. It is true that these provisions outline non-recourse protection only for individuals and do not specify shielding third parties from liability. But these provisions also do not modify the plain and unambiguous text of § 447.15.

42 U.S.C. § 1396a(a)(25)(A)–(B).  This preserves Medicaid's role as the "payor of last resort" while ensuring that providers—like Select—don't use Medicaid as their personal insurance policy against nonpayment.

III.

Select also appeals the district court's grant of summary judgment on its breach of contract claim against Dakotacare.  Select and Dakotacare's relationship was governed by the Hospital Participation Agreement, which acknowledged that the Fund—not Dakotacare—was responsible for paying claims.  And under the agreement between Dakotacare and the Fund, Dakotacare could make payments only when authorized.  Select argues that Dakotacare breached the Hospital Participation Agreement because it did not (1) promptly pay valid claims, (2) encourage the Fund to pay claims and assist Select with issues in delay or nonpayment, or (3) make retroactive denials of claims in good faith and for valid reasons.

First, Dakotacare did not fail to promptly pay claims.  After learning about Mary's Medicaid eligibility, Wollman asked Dakotacare to retroactively cancel Mary's Plan coverage as of April 30, meaning that the Plan would still pay for much of Mary's care.  But rather than immediately terminating coverage, Dakotacare said it would review Mary's documents to make sure that it had the correct effective Medicaid date.  At this point, Dakotacare had not received any claims from Select.  Five days later, Dakotacare received Select's first claim for Mary's care, and the next day, Wollman instructed Dakotacare not to pay any of Select's claims until he had the final determination of the effective date for Mary's Medicaid.  Under its Administrative Services Agreement with the Fund, Dakotacare could make payments only when authorized.  So Dakotacare had no opportunity to delay or withhold payments.

Next, Dakotacare did encourage the Fund to pay its claims.  The record shows that Dakotacare contacted Wollman on November 6 and November 20 about Mary's

Medicaid status. In response to the second prompting, Wollman assured Dakotacare that he would have an answer about Medicaid by mid-December. Because the Fund has authority over payment, the most Dakotacare could do was prompt the Fund.

Finally, Dakotacare did not fail to make a retroactive denial of claims in good faith or for valid reasons. Select argues that Mary's termination under the Plan was ineffective or unlawful, but the Hospital Participation Agreement simply requires that Dakotacare make eligibility determinations in good faith. And under the terms of the Plan, the Fund had the final authority to interpret Mary's eligibility. Even if the Fund's decision was ineffective and incorrect, the Hospital Participation Agreement did not require Dakotacare to indemnify or reimburse Select for the Fund's decision.

IV.

Select also brought a fraud and deceit claim against Brentwood and the Fund. Select argues that they falsely represented that Mary's coverage was terminated and failed to provide Select with a copy of Plan documents despite Select's requests. The district court granted summary judgment to Brentwood and the Fund because Select did not show the necessary reliance to sustain a fraud and deceit claim. Select contests this finding.

As a threshold matter, the district court determined that § 447.15 did not bar Select's fraud and deceit claim because it was not seeking damages for Mary's care but for damages from allegedly deceitful acts. We agree. Although the relief for the breach of contract and tort claim is the same—the difference between the Medicaid payment and the payment under the contract—§ 447.15 does not prevent providers from seeking damages for tortious conduct.

But Select cannot prevail on its fraud and deceit claim. Under South Dakota law, "one who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

-6-

*Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 847 (S.D. 1990) (cleaned up).  Because "reliance is a necessary element in proving an alleged fraud," *Aschoff v. Mobil Oil Corp.*, 261 N.W.2d 120, 124 (S.D. 1977),[3] Select needs to show that it relied on the representation that Mary wasn't covered under the Plan when it accepted the Medicaid payment.  It cannot do so.  Emails demonstrate that Select suspected that Mary could not have been terminated from the Plan and that it continued to seek Medicaid payments to ensure at least some payment:

> [T]here is a question as to whether one of [the Brethren's] members is covered under Medicaid . . . . It is our belief that this should be covered by a separate policy but we have been unable to verify this at present. Nonetheless, in the event Medicaid does make this payment, we intend to continue pursuing this if we find a legal basis exists for the same.

Select sent these emails as late as May 30, 2019, and mentioned no additional representations from Brentwood or the Fund between May 30 and when it accepted money from Medicaid.  The district court properly found that Select did not show reliance for its fraud and deceit claim.

Select argues that the district court ignored an alternative definition of fraud and deceit—"[t]he suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."  S.D. Codified Laws § 20-10-2(3).  Under this definition, Select needed to show that Brentwood and the Fund had a duty to disclose Plan documents.  Select argues that Brentwood and the Fund had a duty to disclose because they knew that Select "would reasonably expect disclosure of th[e] facts"

---

[3]Select argues that it has a viable fraud claim because Mary falsely represented that she did not have insurance on her disability benefits application.  Select claims that under *Tucek v. Mueller*, 511 N.W.2d 832 (S.D. 1994), this is sufficient.  We disagree.  *See Aschoff*, 261 N.W.2d at 124 (explaining that "reliance is a necessary element in proving an alleged fraud").

"because of the relationship between them, the customs of the trade or other objective circumstances." Restatement (Second) of Torts § 551(2)(e).

But this standard applies when "advantage taken of the plaintiff's ignorance is so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling." *Id.* § 551(2)(e) cmt. *l*; *see also Schwartz v. Morgan*, 776 N.W.2d 827, 831 (S.D. 2009). Here, Select is far more sophisticated than Brentwood and the Fund, and their conduct does not meet this high bar. The district court properly found that Select cannot prevail on its fraud and deceit claim.[4]

V.

For these reasons, we affirm.

_____

---

[4]Because we affirm the grant of summary judgment on the fraud and deceit claim, we deny Select's request to reinstate its civil conspiracy claim due to the lack of an underlying tort. *See Kirlin v. Halverson*, 758 N.W.2d 436, 455 (S.D. 2008) (explaining that civil conspiracy is not an independent cause of action and requires an underlying tort claim).